ESTATE OF Edgar A. BERG, Deceased; George Unruh, Jr., Elaine Unruh, Co-personal Representatives, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 91–3198.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1992.

Decided Oct. 5, 1992.

Rehearing Denied Nov. 3, 1992.

---

Robert Vaaler of Grand Forks, N.D., argued, for petitioners.

Bruce Ellison, Dept. of Justice, of Washington, D.C., argued, for respondent.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The estate of Edgar A. Berg, by its representatives, appeals from a Tax Court decision sustaining an estate tax deficiency determined by the Commissioner of Internal Revenue and the addition of a ten percent assessment pursuant to 26 U.S.C. § 6660 (1988), a provision which has been repealed since its application in this case. The estate challenges the Tax Court's find-ings regarding the marketability and minority interest discounts applied to the valuation of the stock of a closely-held real estate holding company, Vaberg Properties, Inc. The estate claims that the Tax Court's findings are clearly erroneous. The Berg estate also argues that the addition to the tax under section 6660 was in error because the estate reasonably relied on its accountant and an earlier Tax Court decision to prepare the return. We affirm the deficiency determination but reverse the section 6660 addition to taxes and remand for further proceedings.

We could state the complex facts in this case in great detail, but the limited issues before us do not require that we do so. The estate tax deficiency was based on a valuation of the Vaberg stock. When Edgar A. Berg died, he owned 2,692 shares of the real estate investment corporation's stock (26.92 percent of the outstanding shares). Vaberg owned a number of apartments, office buildings, and garage and motel properties in the Grand Forks, North Dakota area. The total value of these assets is not an issue before us, but rather, we are concerned with the limited question of the value of the estate's interest in the Vaberg stock, and more specifically, with the Tax Court's determination of the marketability and minority interest discounts. The Commissioner determined that the value of the estate's Vaberg shares should be discounted twenty percent as a minority interest and ten percent for lack of marketability. The estate, however, argued that the minority discount should be forty percent and the lack of marketability discount should be twenty percent.

The estate relied on the recommendation of C.J. Whalen when it prepared its return. Mr. Whalen is an experienced Certified Public Accountant who has taught various tax courses at the University of North Dakota for twenty-four years and has testified previously about valuation discounts. Whalen testified for the estate and his appraisal was submitted to support the estate's valuation claim. Arthur H. Cobb, a Certified Public Accountant, the President of a capital finance and litigation support

firm, and a former university professor, also presented a report and testimony for the estate. Finally, the estate presented a 1975–1989 Grand Forks real estate market economic analysis. Dr. David E. Ramsett, Professor of Economics at the University of North Dakota, prepared the economic report and testified for the estate. The Tax Court, however, cited Whalen's lack of formal education as an appraiser and found that his appraisal was unpersuasive, attached no weight to Cobb's appraisal, and gave Ramsett's economic analysis little weight.

The Commissioner relied on an appraisal that was submitted and certified by Scott A. Torkelson, Appraiser, William C. Herber, Assistant Vice President, and Robert J. Strachota, President, all employees of Shenehon & Associate's, Inc., a company in the business of providing real estate and business valuations. Herber testified for the government. The Tax Court accepted the discounts provided in the Shenehon appraisal and sustained the Commissioner's determination of the marketability and minority interest discounts.

The Tax Court also concluded that under 26 U.S.C. § 6660(a), the Commissioner properly added ten percent or $12,761 to the deficiency of $127,608, for a total of $140,369. The Tax Court rejected the estate's arguments that it had shown a reasonable basis for the valuation claimed on the estate tax return and that the claim was made in good faith. The court thought it significant that the estate had not commissioned a formal appraisal of the fair market value of the Vaberg stock, but rather, had relied on an "earlier Tax Court opinion to prepare the return." The court held that the earlier opinion did not support the estate's resulting valuation, and concluded that the estate had not carried its burden of showing that the Commissioner abused his discretion in determining that the estate failed to show that there was a reasonable basis for the valuation on its tax return and that its claim was made in good faith.

I.

■ The Tax Court approached the marketability and minority interest discounts as factual issues and rejected an argument that earlier cases were determinative of the issue. We have no doubt that the discounts issue is a factual question. Thus, our review is governed by Rule 52 of the Federal Rules of Civil Procedure, the Supreme Court's teaching in *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), and this court's numerous decisions applying the clearly erroneous test.

■ The estate argues that the Tax Court erred in determining the deficiency. The estate argues generally that the appraisals do not establish the value of the corporation's capital stock. The Tax Court opinion, however, makes clear that the parties agreed that the net asset value method (the value of the assets less the outstanding debts) was appropriate for valuing the stock of the closely-held Vaberg corporation. Moreover, the estate used this method in determining the value it reported, and we observe that the overall value of the Vaberg stock was that stated in the tax return—$6,054,153.

The real question then focuses on the marketability and minority interest discounts, and the Tax Court appropriately concentrated on this issue in its opinion. There is no dispute that the discounts were applicable. The issue before us is whether the Tax Court was clearly erroneous in its determination of these discounts.

We first observe that although five witnesses testified, most of the evidence before the Tax Court on this issue came from written reports. The estate attempts to make much of the Tax Court's reference to the "testimony" of various persons who did not testify orally before the Tax Court, but there is no doubt that their opinions, and thus their testimony, were in evidence in the form of their reports.

The Tax Court opinion demonstrates that the judge carefully weighed the substance of the reports and backgrounds of those who gave the expert testimony. The court's detailed discussion centered on the

expert opinion evidence. It found that the expert testimony of Whalen and Cobb was less than satisfactory, and it rejected Ramsett's economic analysis, concluding that the fair market value of the corporate assets, and therefore the stock, had already been adjusted for market conditions. The Tax Court found that the Shenehon analysis was persuasive on both the minority interest and lack of marketability discounts.

The argument that the Tax Court failed to specifically note which of its findings were based on oral testimony and on written reports does not convince us that the Tax Court clearly erred in its findings; nor does the associated argument that the Tax Court erred because it referred to the Shenehon appraisal as the "Torkelson Report" and stated that "Torkelson concludes" and "Torkelson then discusses" even though Herber testified that he had prepared the report. These quibbles do not support an argument that the findings of fact are clearly erroneous.

The estate simply reargues the merits of the valuation issue and attempts to establish the weight to be given to the estate's evidence and the lack of weight to be given the Commissioner's evidence. Under the clearly erroneous standard, we view the evidence "in a light most favorable to the prevailing party below," *Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1212 (8th Cir. 1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986), and when "there are two permissible views of evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City,* 470 U.S. at 574, 105 S.Ct. at 1511. The Tax Court did not clearly err in sustaining the estate tax deficiency.

## II.

■ The estate argues that the Tax Court erred in sustaining the Commissioner's addition of ten percent to the deficiency under 26 U.S.C. § 6660. Section 6660 provides that if an underpayment of tax of more than $1,000 is attributable to a valuation understatement, an amount equal to the percentage of underpayment will be added to the tax. § 6660(a), (d). A valuation understatement exists when "the value of any property claimed ... is 66 2/3 percent or less of the amount determined to be the correct amount." § 6660(c). Section 6660(e), however, provides that the Secretary may waive the addition if "there was a reasonable basis for the valuation ... [and the] claim was made in good faith." § 6660(e). Section 6660 was repealed in 1989 and the parties have not cited any cases that discuss the section 6660 addition to tax issue. We review such determinations on an abuse of discretion basis. *Cf. Heasley v. Commissioner,* 902 F.2d 380, 385 (5th Cir.1990) (reviewing the failure to waive a § 6661 penalty as an abuse of discretion).

The estate relied on the valuation recommendation of C.J. Whalen when it filed its return, and the return contained a statement prepared by Whalen. Whalen, in discussing the minority interest and lack of marketability discounts, relied on an earlier Tax Court decision: *Estate of Andrews v. Commissioner,* 79 T.C. 938 (1982). The estate argues that it reasonably relied on Whalen's recommendation and the *Andrews* case, and that the claim was submitted in good faith.

Whalen is an experienced Certified Public Accountant, a tax advisor, and a taxation instructor at the University of North Dakota. He has experience determining minority interest and lack of marketability discounts, and has testified previously about valuation discounts. Whalen is also familiar with the Vaberg company and the Grand Forks area. George Unruh testified that Whalen is "probably one of the most respected CPAs in that region." Unruh testified that he discussed with Whalen the factors considered and the legal authorities relied on in making the valuation, and that he relied on Whalen's recommendation, believing it to be correct. Unruh testified that the valuation figures were not used to achieve "some sort of bargain" or for the purpose of negotiating with the I.R.S., but that the figures and the "way we came up with the valuation" seemed reasonable. We recognize that Whalen did not have a

"formal" appraisal education and the estate did not commission a "formal" appraisal to determine the fair market value of the Vaberg stock. Further, we recognize that the Commissioner and Tax Court found Whalen's testimony unpersuasive; nevertheless, we believe the estate could reasonably rely on Whalen's expertise and submit its claim in good faith.

In addition, we are not convinced that reliance on the *Andrews* case was misplaced even though the case is not identical to this situation in every way. Because the appraisal process is a somewhat academic exercise, experts rely on a variety of sources to guide their determination of the appropriate discounts to be applied in a given situation. William C. Herber testified that he relied on various texts and articles when determining the discounts stated in the Shenehon appraisal. Herber even stated that he considered *Andrews,* but distinguished its facts and decided that it did not apply to the present situation. In contrast, Whalen relied on various articles, his own comparison of the facts in *Andrews* to this situation, and his interpretation of the discounts that may have been applied to reach the final result in *Andrews.* It is true that *Andrews* does not directly answer the valuation question in this case, but neither do other general articles and texts. We cannot conclude that Whalen unreasonably relied on *Andrews* in his determination of the valuation. Therefore, we are satisfied that there was an abuse of discretion in applying the section 6660 addition to the deficiency.

The decision of the Tax Court is affirmed in part, reversed in part, and remanded for further proceedings.