ESTATE OF CLARA K. HOOVER, DECEASED, YETTA HOOVER BIDEGAIN, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18464–92.  Filed June 21, 1994.

*John S. Campbell*, for petitioner.
*Pamelya P. Herndon*, for respondent.

OPINION

RAUM, *Judge*: Petitioner is the Estate of Clara K. Hoover (Mrs. Hoover), who died on March 7, 1988. The Commissioner determined a gift tax deficiency of $13,960 for the tax year ended December 31, 1987, which has been conceded in full by the Commissioner on brief, and an estate tax deficiency of $994,498, together with a section 6660[1] addition to estate tax in the amount of $52,391.[2] The decedent had a 26-percent interest in a limited partnership that was engaged in the operation of a cattle ranch. After concessions by the parties, the only issue remaining for decision is whether petitioner was entitled to a 30-percent minority interest discount in conjunction with an election to value the real estate used in the ranching business under section 2032A. The facts have been stipulated.

On the date of her death, Mrs. Hoover was a resident of Tucumcari, New Mexico. Her last will and testament, dated October 20, 1980, was filed in the District Court for Quay County, New Mexico, but there was no probate of the estate. In the will, Mrs. Hoover's daughter and only child, Yetta Hoover Bidegain, was designated the personal representative of the estate.

After the death of her husband in 1985, Mrs. Hoover was the sole beneficiary of a revocable living trust named "Hoover Trust A". As of the date of her death, substantially all of the assets in which Mrs. Hoover had an interest had been transferred to Hoover Trust A. After her death, the sole trustee of Hoover Trust A was Yetta Hoover Bidegain. Under the terms of Hoover Trust A, as in effect at the date of Mrs. Hoover's death, the trust beneficiaries included each of her three great grandchildren, Donald P. Bidegain, Scott P. Bidegain, and Louis B. Carman.

Among the assets owned by Hoover Trust A, as of the date of Mrs. Hoover's death, was a 26-percent limited partnership

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The addition to tax has since been resolved by concessions from each of the parties. See *infra* note 7.

interest in a New Mexico limited partnership named "T–4 Cattle Company Limited" (T–4). T–4 was formed on October 20, 1980, and was engaged in the business of operating a 196,438-acre cattle ranch located in Guadalupe, Quay, and San Miguel counties in New Mexico.[3] For convenience the ranch will sometimes be referred to as a farm.

As of Mrs. Hoover's date of death, the partners of T–4 and their respective interests in partnership profits, losses, and capital were as follows:

*General partner:*
| | |
|---|---|
| Yetta Hoover Bidegain | 32% |

*Limited partners:*
| | |
|---|---|
| Hoover Trust A | 26 |
| Philip Howard Bidegain | 22 |
| Yetta Julee Carman | 20 |

The respective fair market values of the T–4 assets, as of the date of decedent's death, were as follows:

| | |
|---|---|
| Cash | $278,887 |
| Certificates of deposit | 700,000 |
| Short-term investments | 844,661 |
| Stocks | 122,302 |
| State municipal bonds | 1,060,222 |
| Livestock | 2,138,313 |
| Ranch equipment | 131,001 |
| Real estate | 10,500,000 |
| Other assets | 93,279 |
| Total assets | 15,868,665 |

There is no indication in the record that the fair market value of the entire partnership was different from the fair market value of its total assets, i.e., without taking into account such items as its history of earnings, etc., and the parties have appeared to treat it as such.[4] Accordingly, petitioner's proportionate share of the aggregate value of the

---

[3] The T–4 Cattle Co., Ltd., originally operated as a general partnership. Although there were no formal transfers of the assets of the general partnership to the limited partnership, the latter exercised dominion and control over all the assets used in connection with the cattle ranching business of the general partnership, and the limited partnership continued the business that had been conducted by the general partnership. The limited partnership continued to employ the employees of the general partnership and has filed its tax returns under the same employer identification number. The parties have treated the assets and business of the general partnership as attributable to the limited partnership, and we do the same for purposes of this case. The record does not disclose whether the general partnership was dissolved or whether it had any residual functions or assets.

[4] The only liability disclosed by the record that might have affected the total value of the partnership was a comparatively insignificant total indebtedness of $130 of the general partnership.

T–4 partnership assets and the partnership itself was $4,125,853 (26 percent of $15,868,665). Its proportionate share of the real estate component of those assets was $2,730,000 (26 percent of $10,500,000). None of the foregoing figures reflects any minority interest discount or section 2032A special use valuation.

Petitioner elected to value the decedent's T–4 partnership interest on the basis of the partnership's qualified use of the real estate as a farm, pursuant to section 2032A. On or about November 8, 1988, petitioner obtained a special use valuation appraisal from an organization known as Price & Co. (Price). Price determined that the "special use value (alternate valuation method) of the T–4 Ranch property", without regard to any minority discount, was $2,052,107. The parties have stipulated that the $2,052,107 figure accurately reflects the property's special use value under section 2032A.[5]

Petitioner's proportionate (26 percent) share of the section 2032A special use value of the partnership real estate was $533,548 (26 percent of $2,052,107). Thus, petitioner's 26-percent proportionate share of the fair market value of the real estate ($2,730,000) exceeded its 26-percent proportionate share of the section 2032A special use value ($533,548) by $2,196,452. But section 2032A(a)(2)[6] places a $750,000 limit upon the aggregate reduction in value with respect to any decedent. And thus the maximum reduction in value that petitioner was entitled to claim was $750,000.

However, prior to subtracting the $750,000 from the taxable value of its gross estate, petitioner discounted the 26-percent share of the fair market value of the T–4 land by 30 percent to reflect decedent's minority interest in the partnership. The calculation of petitioner's taxable interest in real property held through T–4 appeared as follows on an attachment to the estate tax return:

---

[5] Although the parties were initially at odds as to the validity of petitioner's special use valuation election under sec. 2032A, the Commissioner has since conceded that petitioner properly elected and is entitled to claim special use valuation under that section.

[6] Sec. 2032A(a)(2) reads as follows:

(2) LIMITATION ON AGGREGATE REDUCTION IN FAIR MARKET VALUE.—The aggregate decrease in the value of qualified real property taken into account for purposes of this chapter which results from the application of paragraph (1) with respect to any decedent shall not exceed $750,000.

Value of decedent's interest in
  qualifying real property owned by
  T–4 Cattle Co., Ltd.:

| | |
|---|---:|
| Appraised value of real estate ................................. | $10,500,000 |
| Decedent's interest in partnership .......................... | × 26% |
| | 2,730,000 |
| Less discount for lack of control and marketability ................................................. | 30% |
| | 819,000 |
| Full value ................................................................ | [1] 1,911,000 |
| Section 2032A reduction ......................................... | – 750,000 |
| Value based on qualified use .................................. | 1,161,000 |

[1] The $1,911,000 figure reflects the difference between the value of petitioner's 26-percent interest in the partnership real estate ($2,730,000) and the amount of petitioner's 30-percent minority interest discount ($819,000).

The estate tax value of petitioner's T–4 partnership interest was determined by adding the qualified use value of its proportionate interest in the T–4 real estate, reflected above, to its proportionate share of the other T–4 assets' fair market values. In computing its share of the value of the T–4 assets other than real estate, petitioner appears to have taken a similar 30-percent discount for its minority interest in the partnership.

The Commissioner's deficiency notice disallowed petitioner's alternative use valuation and restored the amounts to petitioner's taxable estate.[7] The Commissioner has since conceded that petitioner was entitled to claim special use valuation, pursuant to section 2032A. However, the Commissioner maintains that petitioner may not also subtract the 30-percent minority discount (applicable to decedent's minority interest in the partnership) in determining its share of the property's fair market value prior to reduction for special use valuation. We sustain the Commissioner.

Petitioner's case is for all essential purposes indistinguishable from Estate of Maddox v. Commissioner, 93 T.C. 228 (1989), where the decedent owned a 35.5-percent stock interest in an incorporated family farm. In that case, we held

[7] The Commissioner also determined an addition to tax for substantial estate and gift tax undervaluation, pursuant to sec. 6660. However, the addition to tax under sec. 6660 is no longer at issue. The Commissioner has conceded the addition to tax with respect to all asset valuations other than petitioner's undervaluation of its pro rata interest in the T–4 partnership's livestock. Petitioner conceded the application of sec. 6660 with respect to undervaluation of the cattle.

that the estate was not entitled to a 30-percent minority discount in the valuation of the decedent's stock in conjunction with the use of a section 2032A reduction in value of the farm real estate held by the corporation. Here, the decedent owned a 26-percent interest in a partnership that had extensive holdings in real estate that was eligible for reduction in value under section 2032A. The factual underpinnings of both cases are identical.

The difficulty encountered in both cases is that the decedent did not own an interest in the real estate outright, but instead owned an interest in an organization which in turn owned the real estate: stock in *Estate of Maddox* and a fractional interest in a partnership here. The only provision in section 2032A that deals with such a situation is subsection (g), which provides:

SEC. 2032A (g). APPLICATION OF THIS SECTION AND SECTION 6324B TO INTERESTS IN PARTNERSHIPS, CORPORATIONS, AND TRUSTS.—The Secretary shall prescribe regulations setting forth the application of this section and section 6324B in the case of an interest in a partnership, corporation, or trust which, with respect to the decedent, is an interest in a closely held business (within the meaning of paragraph (1) of section 6166(b)). * * *

But as we pointed out in *Estate of Maddox v. Commissioner*, 93 T.C. at 233:

Although the language of (g) does not explicitly authorize the revaluation of a decedent's stock, it backhandedly tells us that Congress did not want the estate of a stockholder in a family corporation to be deprived of the benefits of section 2032A. However, Congress apparently was not prepared to deal with the myriad problems and situations that could arise in that connection and it directed (not merely authorized) the Secretary to prescribe regulations "setting forth the application of this section" where the decedent had "an interest in a partnership, corporation, or trust." Unfortunately, the Secretary to date has not issued the regulations that he was ordered to prescribe. Some 13 years have now passed since the Congress provided that the Secretary "shall" prescribe the regulations, and at this writing he has not even submitted any proposed regulations. * * *

As of now, some 18 years have passed, and the Secretary has still not put forth the regulations that Congress ordered he "shall" prescribe. In the circumstances, we must do the best we can so as not to deprive a taxpayer of rights that Congress obviously intended to grant. Here, as in a comparable situation, "We do not relish doing the Secretary's work for him, but we have no other course to follow." *First Chicago*

*Corp. v. Commissioner*, 88 T.C. 663, 677 (1987), affd. 842 F.2d 180 (7th Cir. 1988).[8]

Petitioner seeks to avoid the impact of *Estate of Maddox* by relying heavily on the following language in our opinion in that case:

The precise matter in dispute is whether that 30-percent *fair market value* discount is applicable to decrease the *value* of the 355 shares includable in the gross estate once their value has already been substantially reduced below their fair market value as a result of the section 2032A special use valuation of the farm's real property. [*Estate of Maddox v. Commissioner*, 93 T.C. at 230.]

Petitioner argues that it, unlike the taxpayer in *Estate of Maddox*, has not applied the 30-percent minority discount to a value that has already been reduced below fair market value by use of section 2032A. Instead, petitioner contends it applied the 30-percent minority discount directly to the fair market value of the decedent's proportionate interest in the real estate of the partnership, and only then did it undertake to reduce that amount further by the maximum $750,000 available under section 2032A.

To be sure, there is a superficial basis for petitioner's contention. The language in *Estate of Maddox* quoted above as well as other similar language in the opinion could be read as supporting petitioner. But such language was merely responsive to the manner in which that case was presented to us. We did not intend to suggest that anything critical should turn upon the sequence in which the estate claims the benefit of section 2032A and the 30-percent minority discount. The essence of *Estate of Maddox* is that the market discount applicable to reflect a minority interest in an entity owning and operating a farm cannot be used in conjunction with the section 2032A special use "value" that is substituted for the (higher) *fair market value* of the real estate component of the farm.

---

[8] The responsibility for this "sorry situation" rests not only upon the Secretary but also upon Congress, which has made frequent massive revisions of the Internal Revenue Code that created great difficulties for the IRS in administering the Code. In *Occidental Petroleum Corp. v. Commissioner*, 82 T.C. 819, 829 n.6 (1984), involving the same statutory provision considered in *First Chicago Corp. v. Commissioner*, 88 T.C. 663 (1987), affd. 842 F.2d 180 (7th Cir. 1988), we referred to a reported complaint of the then Commissioner of Internal Revenue about "the complexities associated with the passage of frequent tax bills," to which he added: "We are tied up in knots drafting regulations to explain the frequent changes in the law" (quoting Roscoe Egger, Jr., statement in Wall St. J., May 2, 1984, at 33).

We recur to our earlier comment regarding the Secretary's failure to promulgate the congressionally mandated regulations specifying the manner in which section 2032A(g) is to be applied. Had such regulations been issued, we might well not be faced with the problem before us now. Such regulations, obviously intended to fill in gaps in the statute, would plainly be legislative rather than merely interpretative in character. And we are confident that a provision in such regulations embodying the result that we reach herein would be sustained as not being in conflict with the statute, notwithstanding that a different regulation might also be considered valid as within the permissible scope of the Secretary's authority under the statute. Cf. *First Chicago Corp. v. Commissioner, supra* at 676–677.

To give effect to concessions of both parties,

*Decision will be entered under Rule 155.*