ESTATE OF Ray A. FORD, Deceased; Jack F. Ford and Richard A. Ford, Personal Representatives, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 94–2825.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1995.

Decided May 4, 1995.

James W.R. Brown, Omaha, NE, argued, for appellants.

Teresa T. Milton, Washington, DC, argued (Gary R. Allen and Teresa E. McLaughlin, on the brief), for appellee.

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and JONES,* Senior District Judge.

JOHN B. JONES, Senior District Judge.

The estate of Ray A. Ford (the estate), by its representatives, appeals from a Tax Court decision sustaining in part an estate tax deficiency determined by the Commissioner of Internal Revenue (Commissioner). The estate challenges the Tax Court's findings regarding valuation of five closely held corporations in which Ray A. Ford held varying

degrees of ownership on the date of his death. The estate also challenges the Tax Court's findings regarding the lack of marketability and minority interest discounts applied to the stock's valuation. The estate claims the Tax Court's findings are clearly erroneous. We affirm.

## I. Factual Background

The estate's tax return reported a value of $944,000 for the five companies. The Commissioner disputed the value on the estate tax return and determined the value was $2,380,000. The estate challenged the Commissioner's valuation by bringing an action in Tax Court. The Tax Court found the value of the five companies was $2,237,000.

## A. Expert Opinions of Fair Market Value

The Tax Court rejected in its entirety the opinion of valuation given by the estate's expert, Dr. Jerome F. Sherman, who relied upon a weighted average of historic book value and historic earnings in valuing the estate's stock. Dr. Sherman opined the value of the estate's stock in all five corporations was approximately $527,000. The Tax Court evaluated Dr. Sherman's methodology and explained in detail its deficiencies.

Three individuals employed by the Shenehon Company ("Shenehon") prepared the Commissioner's expert report. The Tax Court agreed with Shenehon that four of the five closely held corporations were holding rather than operating companies. The Tax Court abbreviated the names of the four companies as Ford Mercantile, Ford Real Estate, Ford Dodge and Ford Van. These companies consisted of various assets including equipment and real estate which were leased to the operating company, Ford Storage & Moving, for the operation of its moving and storage business. The Tax Court found these four companies were "holding" companies because they were holding assets as investments rather than for income-producing purposes.

---

* The HONORABLE JOHN B. JONES, Senior District Judge, United States District Court for the District of South Dakota, sitting by designation.

The Tax Court accepted Shenehon's opinion that the remaining corporation, Ford Storage & Moving, had components of both a holding and an operating company. The Tax Court agreed with Shenehon's opinion that certain assets owned by Ford Storage & Moving were not necessary to the operation of that business, and considered them to be similar to the assets of the other four companies. The assets found by the Tax Court and Shenehon to be unnecessary to active operations included marketable securities, a 36.19% stock interest in Ford Mercantile, amounts due from stockholders and excess cash.

Shenehon relied on net asset value in placing a value on the four holding companies and the holding portion of Ford Storage & Moving. A weighted average of three major valuation approaches was relied upon by Shenehon in determining the value of the operating portion of Ford Storage & Moving. Certain discounts were then applied, as discussed below, resulting in Shenehon's opinion of value of the estate's stock being approximately $2,420,000.

The Tax Court accepted Shenehon's methodology but allowed more discounts than did Shenehon. Following application of the allowed discounts as discussed below the Tax Court found the fair market value of the estate's stock was approximately $2,237,000.

## B. Lack of Marketability and Minority Interest Discounts

The estate contends in this appeal that the value of its stock in all five Ford companies should be discounted at least 35% for lack of marketability. The estate claims a 7% discount should be applied to the stock in the companies in which Ray Ford held a minority interest.

Shenehon opined that the value of the estate's stock in Ford Real Estate and Ford Dodge should be discounted 20% because Ray Ford held only a minority interest in these two companies and then discounted 10% for lack of marketability. The operating portion of Ford Storage & Moving was discounted for lack of marketability by Shenehon because such a discount was built into the methods used to value it. The Tax Court

agreed with the discounts applied by Shenehon, but found additional discounts were warranted as explained below.

The Tax Court applied a 10% discount for lack of marketability to the estate's stock in Ford Van because it found a ready market did not exist for this stock. The estate owned 92.41% of the Ford Van stock, and therefore the Tax Court held a minority interest discount was not appropriate.

No discount was allowed by Shenehon in the valuation of the estate's interest in Ford Mercantile. At the time of his death Ray Ford owned a 6.86% direct interest in Ford Mercantile. However, if Ray Ford's direct interest was combined with his indirect interest, he controlled 57.75% of Ford Mercantile's stock. His indirect interest was due to his ownership interests in the other Ford companies owning Ford Mercantile stock. Shenehon assumed Ray Ford would sell the Ford Mercantile stock in a block rather than separately and concluded that no discounts should be applied to this stock. The Tax Court rejected Shenehon's block sale assumption and allowed a 20% minority interest discount. The Tax Court also found that no ready market existed for this stock and allowed a 10% discount for lack of marketability.

Shenehon did not allow a discount for lack of marketability in the valuation of the holding portion of Ford Storage & Moving. The Tax Court found that a ready market did not exist for the stock in this company and therefore a 10% discount should be applied to the holding portion in addition to the discount factored into the valuation of the operating portion.

## II. Decision

■ The issues of valuation and applicability of marketability and minority interest discounts are factual questions which we review under the clearly erroneous standard. *Estate of Juden v. Commissioner*, 865 F.2d 960, 963 (8th Cir.1989) (*Juden*). Congress determined that the Tax Court should decide questions of stock valuation. *Palmer v. Commissioner*, 523 F.2d 1308, 1310 (8th Cir. 1975). We will uphold the Tax Court's find-

ings unless we are "left with a definite and firm conviction" that the Tax Court has committed a mistake. *Estate of Palmer v. Commissioner,* 839 F.2d 420, 423 (8th Cir.1988) (internal quotations and citations omitted). Our review of the record convinces us that the evidence as a whole supports the Tax Court's finding of value and that the finding is not clearly erroneous.

### A. Valuation of Holding Companies

The record reveals that the four holding companies owned assets which were leased to Ford Storage & Moving rather than being used to conduct active business operations. We do not find error with the Tax Court's characterization of these four companies as "holding" companies.

Both parties agree the Tax Court should consider the factors listed in Revenue Ruling 59–60 [1] in determining the value of the estate's stock in the four holding companies. The parties disagree, however, on which factors should be given the most weight in making the ultimate determination of fair market value. The estate contends that book value and historical earnings should be given the greatest weight. The Commissioner contends that net asset value should be given the most weight. The Tax Court agreed with the Commissioner.

■ The estate relies on the opinion of its expert, Dr. Sherman, in contending that book value and earnings should be given the greatest weight. Dr. Sherman relied on unadjusted book values and historic earnings or cash flow to value the estate's stock. The Tax Court found use of unadjusted book values would understate the value of the holding companies' assets because many of the assets had been owned for several years and were fully depreciated. The Tax Court also found that an earnings analysis would not provide an accurate valuation of the holding companies because the holding companies were holding assets for investment rather than actively engaging in producing income. In a similar case, we found it was not improper for the Tax Court to conclude earnings alone were not a reliable indicator of value. *Hamm v. Commissioner,* 325 F.2d 934, 941 (8th Cir.1963).

■ The Tax Court is not bound to accept opinions of value provided by experts. *Palmer,* 523 F.2d at 1310 (holding the Tax Court "does not have to accept 'in toto, in part' or at all expert opinion as to value"). The Tax Court rejected Dr. Sherman's entire opinion, emphasizing his lack of qualifications and deficiencies in his methodology. We do not find the Tax Court clearly erred in rejecting Dr. Sherman's opinion.

■ The Commissioner relies on the opinion of her expert, Shenehon, in contending that net asset value should be given the greatest weight in calculating fair market value of the stock in the holding companies. Shenehon explained that underlying asset values provide an accurate valuation because the nature of the holding companies is to hold assets as investments for their long-term appreciation in value. The Tax Court agreed.

---

1. Section 4 of Revenue Ruling 59–60 provides that:

It is advisable to emphasize that in the valuation of the stock of closely held corporations or the stock of corporations where market quotations are either lacking or too scarce to be recognized, all available financial data, as well as all relevant factors affecting the fair market value, should be considered. The following factors, although not all-inclusive are fundamental and require careful analysis in each case:

(a) The nature of the business and the history of the enterprise from its inception.

(b) The economic outlook in general and the condition and outlook of the specific industry in particular.

(c) The book value of the stock and the financial condition of the business.

(d) The earning capacity of the company.

(e) The dividend-paying capacity.

(f) Whether or not the enterprise has goodwill or other intangible value.

(g) Sales of the stock and the size of the block of stock to be valued.

(h) The market price of stocks of corporations engaged in the same or a similar line of business having their stocks actively traded in a free and open market, either on an exchange or over-the-counter.

Rev. Rul. 59–60, 1959–1 C.B. 237, modified by 65–193.

After considering the factors in Revenue Ruling 59–60, *supra*, the Tax Court found net asset values should be given the greatest weight in valuing the estate's stock in the four holding companies. We have previously stated that "it is clearly for the Tax Court to decide the weight to be given to various factors." *Hamm*, 325 F.2d at 941; *Palmer*, 523 F.2d at 1310 (holding that "the weight to be given each of the many valuation factors depends upon the facts of each case"). We find the Tax Court considered the appropriate factors and based upon the evidence in the record the Tax Court did not clearly err in determining the fair market value of the estate's stock in the four holding companies.

## B. Valuation of Ford Storage & Moving

The Tax Court adopted the methodology relied upon by the Commissioner's expert, Shenehon, in valuing Ford Storage & Moving. Shenehon opined that Ford Storage & Moving should be valued by separating the holding component of the company from the operating component. The Tax Court agreed. We do not find the Tax Court clearly erred in valuing Ford Storage & Moving in such a manner.

As with the holding companies, net asset value was given the greatest weight in determining the value of the estate's stock in the holding portion of Ford Storage & Moving. The Tax Court accepted Shenehon's opinion that the total value of this portion was $965,000. For the same reasons stated above relating to valuation of the holding companies, we do not find the Tax Court erred in setting this value.

■ A weighted average of three major valuation methods was relied upon by Shenehon in placing a value of $235,000 on the operating portion of Ford Storage & Moving. The Tax Court analyzed each method and found Shenehon's opinion of value reliable and persuasive.

The estate claims Shenehon and the Tax Court did not properly value the operating portion of Ford Storage & Moving because they did not place much weight on the fact that in 1988 the company lost an important customer, the American Honda Motor Company (Honda). A major portion of Ford Storage & Moving's business consisted of warehousing and distributing Honda products. The Tax Court concurred with Shenehon that the Honda account could be replaced over time and therefore only a slight decrease in projected earnings for 1989 was necessary to properly value the operating portion of Ford Storage & Moving. The revenues for 1989 and 1990 actually increased which indicates that Ford Storage & Moving was successful in replacing the Honda account.

We find that the Tax Court considered the appropriate factors and did not clearly err in valuing the operating portion of Ford Storage & Moving. *See* Rev. Rul. 59–60, *supra*; *Juden*, 865 F.2d at 963 (Tax Court's valuation is reviewed for clear error).

## C. Discounts

■ In a recent case involving a closely held real estate holding company we approved the Tax Court's allowance of a 20% minority interest discount and a 10% lack of marketability discount. *Estate of Berg v. Commissioner*, 976 F.2d 1163, 1166 (8th Cir. 1992). The Tax Court here allowed the same discounts. The Tax Court's opinion reveals that the judge carefully considered the evidence in making her decision regarding the allowance of discounts. Our review of the record convinces us that the Tax Court did not clearly err in its application of discounts to the value of the estate's stock in arriving at a fair market value for estate tax purposes.

## III. Conclusion

For the reasons stated herein, the decision of the Tax Court is affirmed.