ESTATE OF Clara K. HOOVER, deceased; Yetta Hoover Bidegain, personal representative, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 94–9018.

United States Court of Appeals, Tenth Circuit.

Nov. 1, 1995.

John S. Campbell of Campbell & Wells, P.A., Albuquerque, New Mexico, for Petitioner–Appellant.

Robert W. Meltzer, Attorney, Tax Division, Department of Justice, Washington, DC, for Respondent–Appellee.

Before KELLY, McWILLIAMS and HENRY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Petitioner appeals from the tax court's imposition of additional federal estate taxes on the estate of Clara K. Hoover, arising from an election to value the decedent's minority interest in certain ranch property under I.R.C. § 2032A at its special use value rather than at fair market value. The estate contends that § 2032A allows it to apply a minority interest discount to arrive at the fair market value of the decedent's interest in conjunction with reducing that value by

the statutory maximum of $750,000 for federal estate tax reporting purposes. We agree with the estate and hold that the $750,000 maximum reduction in value of qualified real property imposed by § 2032A must be subtracted from the true fair market value of a minority interest in the property. In determining the fair market value it is appropriate to take into account a discount factor for the minority interest holder's lack of control and marketability. We therefore reverse the decision of the tax court. Our jurisdiction arises under I.R.C. § 7482.

### Background

Clara K. Hoover died on March 7, 1988. Her estate filed a timely federal estate tax return. Included among the assets in the decedent's estate was a 26% interest in the T–4 Cattle Company, Limited, a family limited partnership engaged in the business of operating a 196,438 acre cattle ranch in Guadalupe, Quay, and San Miguel counties in New Mexico. The real property owned by the limited partnership (appraised at $10,-500,000) is qualified real property, as defined by § 2032A of the Internal Revenue Code. On the federal estate tax return, the estate properly made an election to value the decedent's interest in the qualified real property under the special use valuation provisions of § 2032A rather than at fair market value.

In valuing Ms. Hoover's 26% interest in the limited partnership's qualified real property, the estate first calculated her interest as a pro rata share of the total fair market value of the entire ranch property (26% of $10,500,000, or $2,730,000). The estate next discounted this amount by 30% ($819,000) to reflect the lack of marketability and control associated with the decedent's minority interest in the limited partnership. The estate and the Commissioner stipulated that this methodology would be appropriate to arrive at the fair market value of the decedent's 26% interest in the qualified real property if § 2032A were not elected. The fair market value was thus $1,911,000 ($2,730,000–$819,-000).

The estate and the Commissioner further stipulated that the 2032A special use value of the ranch was $2,052,107. The decedent's 26% pro rata share of the of the special use value of the qualified real property was therefore $533,548. Unlike the fair market value computation, neither the Commissioner nor the estate applied a minority discount factor in arriving at the special use value of the decedent's interest in the qualified real property.

Next, the estate compared the fair market value of the decedent's 26% interest in the real property (including the minority interest discount) to the special use value of her interest (not including any discount). Because the difference ($1,911,000–$533,348, or $1,377,552) exceeded $750,000, the estate reduced the fair market value of the decedent's interest in the qualified real property as reported on the estate tax return by $750,000, as provided by I.R.C. § 2032A(a)(2).

Based on this methodology, the estate reported that the value of the decedent's 26% interest in the limited partnership's qualified real property for estate tax purposes was $1,161,000. When added to the decedent's 26% interest in the other assets of the limited partnership (which had a total fair market value of $5,368,665), the total value of the decedent's interest in the limited partnership for estate tax purposes was $2,138,097.

The Commissioner contested the methodology adopted by the estate. The tax court agreed, holding that when an estate makes an election to value its qualified real property under § 2032A it gives up the ability ever to employ a minority discount factor in its calculations. *Estate of Hoover v. Commissioner,* 102 T.C. 777, 781, 1994 WL 273951 (1994). Thus, according to the tax court, the appropriate valuation was $1,980,000 ($2,730,000–$750,000). This appeal followed.

### Discussion

■ "Congress directed the United States Courts of Appeals to review tax court decisions 'in the same manner and to the same extent as decisions of the district court in civil actions tried without a jury.'" *Love Box Co. v. Commissioner,* 842 F.2d 1213, 1215 (10th Cir.) (quoting I.R.C. § 7482), *cert. denied,* 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988). Therefore, we review the

tax court's resolution of questions of law de novo. *Worden v. Commissioner*, 2 F.3d 359, 361 (10th Cir.1993) (citing *National Collegiate Athletic Ass'n v. Commissioner*, 914 F.2d 1417, 1420 (10th Cir.1990)).

■ As a general rule, real property is valued for federal estate tax purposes at its fair market value. I.R.C. § 2031; Treas. Reg. § 20.2031–1(b). However, under § 2032A, the executor may make an election to value qualified real property at the "value for the use under which it qualifies." I.R.C. § 2032A(a)(1). The use of real property for farming or ranching purposes is enumerated as a "qualified use." *Id.* § 2032A(b)(2)(A), (e)(4). Congress enacted § 2032A to provide relief to the heirs of family farms, who might be forced to sell their land in order to pay estate taxes if it is valued at its fair market value based on its "highest and best use." H.R.Rep. No. 1380, 94th Cong., 2d Sess. 22 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3356, 3376. This treatment "encourage[s] the continued use of property for farming and other small business purposes." *Id.*

The fact that the decedent owned her interest in the ranch through a limited partnership rather than outright does not change the application of § 2032A. Subsection (g) of the statute indicates that Congress intended § 2032A to apply to "Interests in Partnerships, Corporations, and Trusts," despite the fact that the Secretary has not as of this date "prescribe[d] regulations" regarding such forms of indirect ownership. I.R.C. § 2032A(g). The tax court agrees in its decision that the statute "backhandedly tells us that Congress did not want the estate of a [holder of an interest in a family limited partnership] to be deprived of the benefits of section 2032A." *Hoover*, 102 T.C. at 782–83 (quoting *Estate of Maddox v. Commissioner*, 93 T.C. 228, 233, 1989 WL 88945 (1989)); *see also* Treas.Reg. § 20.2032A–3(b) ("The real property may be owned directly or ... indirectly through ownership of an interest in a corporation, a partnership, or a trust."). Moreover, the parties agree in their briefs that the decedent's ownership through the limited partnership does not affect the application of § 2032A. Aplt.Br. 9; Aplee.Br. 26–30.

The ability of the estates of deceased owners of qualified real property to reduce the value of their holdings for estate tax purposes is not without its limitations. Under § 2032A(a)(2), the "aggregate decrease in the value of qualified real property ... which results from the ... [election] ... shall not exceed $750,000." The fact that the difference between the fair market value of Ms. Hoover's interest and the special use value exceeded $750,000 triggered § 2032A(a)(2), and the reduction in the reported value of the ranch property on the estate tax return was capped at $750,000. The estate subtracted this amount from the fair market value of the decedent's 26% share, taking into account the minority interest discount.

Both the tax court and the Commissioner rely heavily on *Estate of Maddox v. Commissioner*, 93 T.C. 228, 1989 WL 88945 (1989), which the tax court stated is "for all essential purposes indistinguishable" from the present case. *Hoover*, 102 T.C. at 781. Based on this analogy, the tax court held that the estate may not subtract the 30% minority interest discount in determining fair market value in conjunction with reducing the reported value of qualified real property under § 2032A. *Maddox*, however, is distinguishable from the case before us. In *Maddox*, the estate made an election under § 2032A to value the decedent's minority interest in the real property of a family farm at its special use value rather than at fair market value. 93 T.C. at 229. The estate then attempted to reduce the *special use value* of the decedent's holdings by 30% to account for his minority interest. *Id.* at 229–30. The tax court properly held that the estate could not take advantage of such a double reduction:

> [T]he "value" of 355 shares, as substantially decreased by the application of section 2032A to the real estate, the principal asset of the farm, is not their "fair market value." Accordingly, the 30–percent minority interest discount, *which would otherwise be applicable to reduce the "fair market value"* of the shares, has no application whatever to shrink further a value that is already substantially less than and is unrelated to their fair market value.

*Id.* at 231 (emphasis added).

However, *Maddox* does not call into play the $750,000 limitation provided by

§ 2032A(a)(2). In *Maddox*, the difference between the fair market value (incorporating a minority interest discount) and the special use value (without any discount) was less than the statutory maximum, and it was therefore the special use value itself that the estate elected to report on the estate tax return. *Id.* The problem in *Maddox* arose when the estate attempted to reduce further the reported special use value by applying a minority interest discount.

The present matter is quite different. Here, the difference between the fair market value of the decedent's interest in the qualified real property (incorporating the 30% minority interest discount) and the decedent's pro rata share of the special use value (without any discount) exceeded $750,000. This scenario, which did not occur in *Maddox*, triggers § 2032A(a)(2). As the title of the subsection, "Limitation on aggregate reduction in fair market value," suggests, the proper value for the estate to report has nothing to do with the special use value; rather it is the *fair market value* minus $750,000.

The reasoning adopted by both the tax court and the Commissioner suggests that "fair market value" takes on a different meaning under § 2032A than it assumes under other circumstances. In fact, however, the concept of "fair market value" is not itself altered by the statute; nowhere in the language of the statute or in the legislative history does Congress suggest that § 2032A is designed to modify the definition of "fair market value."

■ A proper determination of fair market value necessarily must consider the decedent's minority interest and discount for it. The Treasury Regulations state unequivocally that "fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Treas.Reg. § 20.2031–1(b). The regulations add that the fair market value of interests in businesses (such as the decedent's 26% interest in the limited partnership) "is determined on the basis of all relevant factors . . . ." *Id.*

§ 20.2031–3. Among the "relevant factors" to be considered is "the degree of control of the business represented by the block of stock to be valued." *Id.* § 20.2031–2(f). Thus, to arrive at the fair market value of a minority interest, a discount may be employed to account for the lack of control and marketability. *Estate of Berg v. Commissioner*, 976 F.2d 1163, 1165–66 (8th Cir.1992) (holding that a minority interest discount is applicable in determining the fair market value of a 26.92% interest in a real estate holding company); *Propstra v. United States*, 680 F.2d 1248, 1253 (9th Cir.1982) (allowing discount for minority interest in real estate); *see also Estate of Ford v. Commissioner*, 53 F.3d 924, 928 (8th Cir.1995) (holding that the tax court "did not clearly err in its application of discounts to the value of the estate's stock in arriving at a fair market value for estate tax purposes"); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters.*, 793 F.2d 1456, 1462 (5th Cir.1986) (discrediting evidence regarding value that "failed to consider that the Trust's stock represented a minority position").

Proper application of § 2032A(a)(2) must involve an accurate determination of fair market value, which necessarily incorporates the minority interest discount. The $750,000 maximum reduction from fair market value under § 2032A(a)(2) is a reduction from the value that would otherwise be reported if no § 2032A election were made. Clearly, if no § 2032A election is made, the value of the property includable in the gross estate would incorporate a minority interest discount. *See* I.R.C. § 2031; Treas.Reg. § 20.2031–2(f). Without applying the minority interest discount, the "value" of the decedent's 26% interest is not its fair market value at all.

Finally, we would observe that the Commissioner concedes the required regulations have not yet been promulgated. That being the case, there exists no basis to justify a redefinition of "fair market value" for use in determining whether the difference between that value and the "special use value" exceeds $750,000. Federal estate taxes, there-

**1048**

fore, must be recalculated in accordance with this opinion.

REVERSED.

McWILLIAMS, Senior Circuit Judge, dissents.

I am in accord with the result reached by the Tax Court and its reasoning. *See Estate of Hoover v. Commissioner,* 102 T.C. 777, 1994 WL 273951 (1994). Therefore, I would affirm.