106 T.C. No. 10


UNITED STATES TAX COURT


ESTATE OF MILADA S. NEUMANN, DECEASED, ERIC W.
SHAW, ANCILLARY ADMINISTRATOR, C.T.A., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11060-94.                    Filed April 9, 1996.

        Decedent, a nonresident alien, died in 1990.  She
bequeathed U.S. situs property outright to her
grandchildren.  In 1986, bequests of this type, i.e.,
"direct skips", were first subjected to the generation-
skipping transfer (GST) tax provisions of secs. 2601
through 2663, I.R.C.  At the time of decedent's death,
regulations dealing with "direct skips" had not been
issued.  Held, the bequests are subject to the GST tax.
The issuance of regulations in respect of "direct
skips" by nonresident aliens provided for in sec.
2663(2), I.R.C., is not a condition precedent to the
imposition of the GST tax on such "direct skips" but
merely authorizes the Secretary to prescribe the
allocations and calculations involved in determining
how such tax should be imposed.

        Edward L. Peck and Thomas V. Glynn, for petitioner.

        Moira L. Sullivan, for respondent.


                              OPINION


        TANNENWALD, Judge:  Respondent determined a deficiency in

petitioner's Federal estate tax and generation-skipping transfer

(GST) tax in the amount of $2,002,102.05.  After concessions, the

sole issue remaining for decision is whether the GST tax, under

sections 2601 through 2663,[1] applies to the transfer of U.S.

situs property to decedent's grandchildren, where, at the time of

death, decedent was a nonresident alien and regulations had not

yet been promulgated under section 2663(2).

        All the facts have been stipulated and are so found.  The

stipulation of facts and the exhibits attached thereto are

incorporated herein by this reference.

        Petitioner is the estate of Milada S. Neumann (decedent) who

died testate on July 14, 1990.  Decedent was a resident and

citizen of the Republic of Venezuela at the time of her death.

Eric W. Shaw is the ancillary administrator and resided in

Larchmont, New York, at the time the petition was filed.

        Decedent's will was admitted to ancillary probate by the

Surrogate's Court of New York County, New York.  As translated

into English, the will provides in part as follows:

---

[1] All statutory references are to the Internal Revenue Code in
effect as of the date of decedent's death, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

Second: I resolve that all that is legitimate (that is
fifty percent) corresponds to my only legitimate heir,
my son Michal * * *

Third: I instruct that after the legitimate is
subtracted, all the available portion of my estate
(that is fifty percent) is distributed as follows: half
of the available (that is twenty-five percent) to my
legitimate granddaughter Vanesa * * * and the other
half of the available (that is twenty-five percent) to
my legitimate grandson, Ricardo.

Vanesa and Ricardo are the children of decedent's son,
Michal.  At the time of decedent's death, Michal and Ricardo were
citizens and residents of Venezuela, and Vanesa was a citizen and
resident of the United States.

Decedent's estate included U.S. situs property consisting of
works of art and other tangible personal property, and a
cooperative apartment, all located in New York, New York.  The
estate also included foreign situs property including cash and
securities located in Venezuela and in a Cayman Islands Trust.
At the time of death, the U.S. situs property had a value of
approximately $20 million, and the foreign situs property had a
value of approximately $15 million.

In the notice of deficiency, respondent determined that the
testamentary transfers of property to Vanesa and Ricardo,
decedent's grandchildren, were subject to the GST tax.

The generation-skipping transfer tax was first imposed by
the Tax Reform Act of 1976, Pub. L. 94-455, sec. 2006, 90 Stat.
1520, 1879, but applied only to transfers in trust and not to

"direct skip" transfers such as are involved herein, e.g., outright bequests by a decedent to a grandchild. See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 565 (J. Comm. Print 1976), 1976-3 C.B. (Vol. 2) 577. Section 2614(b), enacted in 1976, made clear that the GST tax was to apply only to nonresident aliens in respect of property that would otherwise be taken into account for purposes of the estate tax to which nonresident aliens were already subject by virtue of section 2101(a). See General Explanation of the Tax Reform Act of 1976, supra at 580, 1976-3 C.B. (Vol. 2) at 592.

In 1986, dissatisfied with the GST tax, Congress retroactively repealed the 1976 provisions and enacted new provisions extending the GST tax to "direct skip" transfers such as are involved herein. See Tax Reform Act of 1986, Pub. L. 99-514, sec. 1431, 100 Stat. 2085, 2717.[2] Section 2663, enacted in 1986, provided:

> The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this chapter, including--
>
> *   *   *   *   *   *   *
>
> (2) regulations (consistent with the principles of chapters 11 and 12) providing for

[2] Sec. 2614(b) disappeared in the 1986 amendments presumably because Congress intended the limitation to be reflected in the definitions in sec. 2612.

the application of this chapter in the case of transferors who are nonresidents not citizens of the United States, * * *

No regulation in respect of generation-skipping transfers by nonresident aliens had been issued at the time of decedent's death.  Notice of proposed regulations dealing with the GST tax as applied to nonresident aliens was first published in the Federal Register on December 24, 1992.  See PS-73-88, 1993-1 C.B. 867, 883.  Final regulations were published on December 27, 1995. T.D. 8644, 1996-7 I.R.B. 16, 44 (Feb. 12, 1996).  Both the proposed and final regulations had effective dates subsequent to the date of decedent's death.

Petitioner argues the GST tax should not apply to "direct skips" by nonresident aliens which occurred prior to the adoption of implementing regulations on the ground that section 2663(2) manifests the intent of Congress to require such regulations as a condition to the imposition of such tax.  Respondent counters that the statute itself imposes the tax and that section 2663(2) represents simply a recognition by Congress that regulations might be needed to fill in some of the details affecting the application of the GST tax to transfers by nonresident aliens. In this connection, we note that respondent apparently determined the manner in which the GST tax should be applied herein consistently with the methodology set forth in the proposed regulations and that petitioner does not question that

methodology except in the context of the contention that such regulations were necessary to the imposition of the GST tax and that therefore the use of that methodology constituted an unjustified retroactive application of the regulations.

Thus, we are called upon to resolve the following question: Are the regulations a necessary condition to determining "whether" the GST tax applies, as petitioner contends, or do they constitute only a means of arriving at "how" that tax, otherwise imposed by the statute, should be determined, as respondent contends.

In support of its position, petitioner relies heavily on Alexander v. Commissioner, 95 T.C. 467 (1990), affd. without published opinion sub nom. Stell v. Commissioner, 999 F.2d 544 (9th Cir. 1993). In that case, section 465(c)(1), as then in effect, set forth specific types of transactions to which the at-risk provisions applied (see 95 T.C. at 469 n.4) and then provided in section 465(c)(3):

> (3) Extension to other activities.--
>
> (A) In general.--In the case of taxable years beginning after December 31, 1978, this section also applies to each activity--
>
> (i) engaged in by the taxpayer in carrying on a trade or business or for the production of income, and
>
> (ii) which is not described in paragraph (1),

* * * * * * *

> (D) Application of subsection (b)(3).--In the case of an activity described in subparagraph (A), subsection (b)(3) shall apply <u>only to the extent provided in regulations prescribed by the Secretary</u>. [Emphasis added.]

The activity of the taxpayer was not one of the specified types of transactions that fell within the scope of an activity described in section 465(c)(1). No regulations had been issued under section 465(c)(3)(D). We held that the issuance of the regulations was a precondition to a determination <u>whether</u> the at-risk rules applied to the taxpayer's activity. In so doing, we specifically characterized the "only to the extent" language of the statute as unambiguous and therefore controlling. <u>Alexander v. Commissioner</u>, <u>supra</u> at 473; see <u>H. Enters. Intl., Inc. v. Commissioner</u>, 105 T.C. 71, 82 (1995).

Respondent contends that this foundation of our opinion distinguishes <u>Alexander</u> from the instant case and relies on <u>Occidental Petroleum Corp. v. Commissioner</u>, 82 T.C. 819 (1984), which dealt with the effect on the alternative minimum tax of the absence of regulations under section 58(h) which provided:

> SEC. 58(h) Regulations To Include Tax Benefit Rule.--The Secretary shall prescribe regulations under which items of tax preference shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's tax under this subtitle for any taxable years.

We held that the absence of regulations did not preclude proper adjustments in respect of the tax benefit rule and went on to determine those adjustments in that case. The rationale of our opinion was that section 58(h) was intended by Congress to provide a basis for "how" the alternative minimum tax should be applied in order to take into account the tax benefit rule.

We reaffirmed our position as to the effect of the absence of regulations under section 58(h) in Breakell v. Commissioner, 97 T.C. 282, 285 (1991), affd. in part, revd. in part without published opinion 996 F.2d 1231 (11th Cir. 1993); see also First Chicago Corp. v. Commissioner, 88 T.C. 663, 669 (1987), affd. 842 F.2d 180 (7th Cir. 1988); cf. Estate of Hoover v. Commissioner, 102 T.C. 777, 782 (1994), revd. on another issue 69 F.3d 1044 (10th Cir. 1995), where we adopted a similar view in respect of the absence of regulations directed to be prescribed by the Secretary under section 2032A(g).

More recently, in H. Enters. Intl., Inc. v Commissioner, supra, we dealt with a situation comparable to that herein, involving the impact of the failure of the Secretary to issue regulations to prevent tax avoidance under section 7701(f) on the application of the limitations of sections 246A and 265(a)(2) to the interest on funds borrowed by one corporation and used by an affiliated corporation to purchase portfolio stock and tax-exempt securities.

Section 7701(f) provides:

SEC. 7701(f)  Use of Related Persons or Pass-Thru Entities.--<u>The Secretary shall prescribe such regulations as may be necessary or appropriate</u> to prevent the avoidance of those provisions of this title which deal with--

(1) the linking of borrowing to investment, or

(2) diminishing risks,

through the use of related persons, pass-thru entities, or other intermediaries. [Emphasis added.]

Reviewing the analyses and conclusions of <u>Occidental Petroleum Corp. v. Commissioner</u>, <u>supra</u>, <u>First Chicago Corp. v. Commissioner</u>, <u>supra</u>, and <u>Alexander v. Commissioner</u>, <u>supra</u>, we held that the issuance of regulations under section 7701(f) was not a precondition to applying sections 246A and 265(a)(2) to transactions involving a parent corporation and its subsidiary. In so holding, we followed <u>Occidental Petroleum</u> and <u>First Chicago</u> and distinguished <u>Alexander</u> on the ground that the "only to the extent" language of section 465(c)(3)(D) was absent from section 7701(f).  See <u>H. Enters. Intl., Inc. v. Commissioner</u>, <u>supra</u> at 81-84.  In short, the teaching of the decided cases is that issuance of regulations is to be considered a precondition to the imposition of a tax where the applicable provision directing the issuance of such regulations reflects a "whether" characterization, such as existed in <u>Alexander</u>, and not where the

provision simply reflects a "how" characterization.  We follow that path herein.

Under these circumstances and applying the teaching of the decided cases, we hold that the regulations contemplated under section 2663(2) reflect a "how" characterization and their issuance is not a necessary precondition to the imposition of the GST tax on the transfers involved herein.  In enacting section 2663(2), Congress simply recognized that there would be problems of allocation and calculations of tax in respect of nonresident aliens because, unlike citizens and residents, not all the property of nonresident aliens is subject to U.S. estate tax.

We are unimpressed with petitioner's attempt to create a "whether" patina to section 2663(2) by pointing to alleged gaps and possible invalid provisions of the proposed regulations dealing with the definition of "direct skip" transfers and the calculation of the taxable amount of a "direct skip" and applicable rate of tax.  Such gaps and provisions clearly go to the "how" and not to the "whether" in respect of the application of the GST tax.[3]  In this connection, we note that petitioner

[3] For a critical analysis of the proposed regulations, see Schlesinger, "The Generation-Skipping Transfer Tax--A Reexamination on Its Ninth Anniversary", 74 Taxes 49 (Jan. 1996); Heller & Sasaki, "Proposed Regulation Section 26.2663-2 and the Application of the Generation-Skipping Transfer Tax to Transfer by Nonresident Aliens", 12 Intl. Tax & Bus. Law. 291 (1994); see also Helt, "Generation-Skipping Transfer Tax Regulations," 74

(continued...)

concedes that the transfers involved herein were "direct skips" and, as we have previously pointed out, does not question respondent's calculation of the GST tax on those transfers.

In light of our holding, we have no need to explore petitioner's arguments regarding retroactivity or the alleged failure of the Secretary to comply with the Administrative Procedure Act, 5 U.S.C. secs. 551-559 (1988), in issuing the proposed regulations.

To reflect the foregoing, and in order to take into account the settlement of certain unrelated issues,

<u>Decision will be entered under Rule 155</u>.

---

[3](...continued)
Taxes 67 (1996), analyzing the extent to which the final regulations removed some of the gaps, etc. in the proposed regulations.