T.C. Memo. 1997-67

UNITED STATES TAX COURT

JEWELL E. GRAY, DONOR, DECEASED and
ESTATE OF JEWELL E. GRAY, DECEASED, JEWELL MAE DETJEN,
PERSONAL REPRESENTATIVE, ET AL.,[1] Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18526-93, 18537-93,      Filed February 5, 1997.
            18538-93.

<u>Daniel C. Johnson</u> and <u>Philip A. Diamond</u>, for petitioner.

<u>James F. Kearney</u>, for respondent.

---

[1]The cases of Jewell E. Gray, Donor, Deceased, and Estate of Jewell E. Gray, Deceased, Jewell Mae Detjen, Personal Representative, docket No. 18526-93; Jewell E. Gray Revocable Trust, Roger Coleman and Jewell Detjen, Co-Trustees, and Estate of Jewell E. Gray, Deceased, First Union National Bank of Florida, Personal Representative, docket No. 18537-93; and Estate of Jewell E. Gray, Deceased, First Union National Bank of Florida, Personal Representative, docket No. 18538-93, were consolidated for trial, briefing, and opinion.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined a deficiency in petitioner's estate tax of $1,179,865.[2]

After concessions, we must decide the following issues:

1.    Whether transfers totaling $1,724,198 from Beth W. Corp. to or on behalf of decedent are loans.  We hold that the transfers are not loans and that petitioner may not deduct the transfers as a claim against the estate.

2.    whether the value of the stock of Beth W. Corp. should be discounted because Beth W. Corp. will be liable for tax on a capital gain when and if it is paid for real property it sold to trusts established by decedent.  We hold that the value of the stock should not be discounted.

3.    whether the appropriate discount for lack of marketability for the stock of Beth W. Corp. is 40 percent, as petitioner contends; zero, as respondent contends; or some other amount.  We apply a 15-percent discount for lack of marketability.

Section references are to the Internal Revenue Code as in effect on the date of death of Jewell E. Gray (decedent).  Rule references are to the Tax Court Rules of Practice and Procedure.

---

[2]Respondent concedes all of the issues in docket Nos. 18526-93 (gift tax and generation skipping tax) and 18537-93 (generation skipping tax).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.   Decedent and Decedent's Estate

Decedent, a resident of Broward County, Florida, died testate on August 30, 1989.  In 1986, decedent owned all of the stock of Beth W. Corp. (described below at par. B-1).  She established a revocable trust and irrevocable trusts #1, #2, and #3 (described below at par. C) and transferred some of her stock to them before she died.  Decedent was the president of Beth W. Corp. when she died.

Jewell Pollett (Pollett) is decedent's granddaughter. Pollett saw decedent about 3 times a week during the 10 years before decedent died.  Pollett spoke with decedent on the telephone daily and did personal things for her such as pay some of her bills.

The Broward County Probate Court appointed First Union National Bank of Florida (First Union) to be the personal representative of decedent's estate on January 5, 1990.  First Union published a notice of administration to creditors and interested parties on January 12, 1990.  Beth W. Corp. timely filed a claim for $1,711,321.72 with the Broward County Probate Court stating that decedent owed Beth W. Corp. that amount. First Union did not file an objection to this claim.

The most valuable asset in decedent's gross estate was Beth W. Corp. stock. Decedent owned 7,457 of the 9,040 shares through the revocable living trust when she died. The other shares were owned by two of the irrevocable trusts.

B.  Beth W. Corp.'s Transfers to or on Behalf of Decedent

1.  Beth W. Corp.

Beth W. Corp. was a personal holding company. Decedent owned 82.49 percent of the stock of Beth W. Corp. when she died. Beth W. Corp. has been a C corporation and used the accrual method of accounting since its inception. Decedent, as Beth W. Corp.'s president, made most of the business decisions on a day-to-day basis, and dealt with attorneys, bankers, and accountants.

Pollett was an officer of Beth W. Corp. from 1982 to the time of trial.

Beth W. Corp. reported the following on its corporate income tax return for fiscal year ending July 31, 1989:

| Assets | |
| --- | --- |
| Cash & marketable securities | $80,664 |
| Accounts receivable-trade | 0 |
| Inventories | 0 |
| Other current assets | 56,277 |
| Total current assets | 136,941 |
| | |
| Loans to shareholders | 1,878,187 |
| Mortgages & R.E. loans | 2,265,000 |
| Marketable securities | 645,187 |
| Buildings & other depreciable assets | 0 |
| Land (55.91 acres) | 0 |
| Other assets | 119,048 |
| Total Assets | 5,044,363 |

Liabilities

| | |
|---|---:|
| Notes payable | 0 |
| Accounts payable | 10,905 |
| Accrued expenses & other | 0 |
| Total current liabilities | 10,905 |
| | |
| Long term debt | 0 |
| Deferred gain - sale of 55.91 acres | 2,220,144 |
| Other liabilities - deferred taxes | 0 |
| Total Liabilities | 2,231,049 |

Shareholders' Equity

| | |
|---|---:|
| Common stock | 9,040 |
| Paid-in or capital surplus | 0 |
| Treasury stock | 0 |
| Retained earnings | 2,804,274 |
| Total shareholders' equity | 2,813,314 |
| | |
| Total Liabilities & Equity | 5,044,363 |
| | |
| Common shares outstanding | 9,040 |
| Book value per common share | 311.21 |

When decedent died on August 30, 1989, Beth W. Corp. had unrealized appreciation in marketable securities of $165,191.

Beth W. Corp.'s balance sheet showed the same assets and liabilities when decedent died as it reported on its corporate income tax return for the year ending July 31, 1989. The parties agree that this balance sheet is correct except that they disagree about whether decedent owed $1,724,198 to Beth W. Corp. and whether deferred gain on a mortgage note receivable (built-in capital gain) was a liability.

2. Transfers from Beth W. Corp. to Decedent

Beth W. Corp. paid a substantial amount of money to and on behalf of decedent. Beth W. Corp. recorded the transfers to decedent as loans in its books and records. Beth W. Corp.'s

books and records showed that decedent owed $1,724,198 to Beth W. Corp. when she died.

Beth W. Corp. reported the transfers as loans on its Federal corporate income tax returns. Beth W. Corp. paid Federal income tax on interest on the transfers it received from decedent.

Florida required corporations to pay intangible property tax equal to .1 percent of their assets each year on January 1. Beth W. Corp. paid Florida about $5,000 per year for intangible personal property taxes. Beth W. Corp. reported the loans receivable (i.e., $1,724,198[3] it had transferred to decedent and which decedent had not repaid) as an asset for purposes of the Florida intangible personal property tax. Beth W. Corp. had $3,320,165 in other assets.

At quarterly meetings or directors' meetings, Beth W. Corp. prepared promissory notes which state that decedent owed Beth W. Corp. the amounts transferred. Decedent applied her name to the notes with a stamp instead of signing them because she had palsy, which made it difficult for her to sign her name. Notes for $483,953 (28 percent) of the amount claimed to be loans were not offered into evidence; signed notes totaling $1,240,245 (72 percent) of the $1,724,198 were admitted into evidence. Some of the notes that Beth W. Corp. issued were demand notes and some

---

[3]The parties do not explain the difference between the $1,878,187 of shareholder loans reported in the balance sheet and the $1,724,198 at issue here.

had fixed repayment dates.[4] Beth W. Corp. had made no demand for payment on the demand notes when decedent died. There are 14 signed promissory notes in evidence as follows:

|       Date       |   Amount    | Interest Rate |     Due Date     | Paid |
| ---------------- | ----------- | ------------- | ---------------- | ---- |
| Jun. 1, 1984     | $760,000    | 10.5          | May  31, 1989    | No*  |
| Sep. 1, 1984     | 12,000      | 12.0          | Aug. 31, 1989    | Yes  |
| Oct. 1, 1984     | 14,000      | 12.0          | Sep. 30, 1989    | Yes  |
| Jan. 1, 1985     | 21,000      | 12.0          | Dec. 31, 1990    | Yes  |
| May  1, 1985     | 32,000      | 12.0          | Apr. 30, 1990    | Yes  |
| Jul. 1, 1985     | 24,000      | 12.0          | Jul. 30, 1990    | Yes  |
| Jul. 5, 1985     | 77,245      | 12.0          | Jul.  5, 1993    | No   |
| Aug. 1, 1985     | 26,000      | 11.0          | Jul. 31, 1990    | No   |
| Aug. 1, 1985     | 218,000     | 12.0          | Jul. 31, 1990    | No   |
| Mar. 1, 1986     | 12,000      | 8.5           | Mar.  1, 1989    | No*  |
| May  1, 1986     | 10,000      | 8.0           | May   1, 1989    | No*  |
| Jun. 1, 1986     | 10,000      | 8.0           | Jun.  1, 1989    | No*  |
| Jul. 1, 1986     | 10,000      | 8.5           | Jul.  1, 1989    | No*  |
| Aug. 1, 1986     | 14,000      | 8.5           | Aug.  1, 1989    | No*  |
| Total            | $1,240,245  |               |                  |      |

Six of these notes (marked with "*") totaling $816,000, were past due when decedent died. Petitioner had paid only $103,000 of the $1,240,245 of notes in evidence that were due when she died. Decedent repaid some principal by forgoing receipt of some redemptions and dividends owed to her by Beth W. Corp. Beth W. Corp.'s books and records showed that had happened.

Decedent told her granddaughter, Pollett, that she intended to repay the transfers (which decedent consistently referred to as loans). J. Marvin Smith (Smith), the trust administrator for First Union, executor and fiduciary to decedent's estate, believed that the transfers were loans to decedent from Beth W.

_____

[4]Petitioner did not offer any demand notes into evidence.

Corp., which decedent's estate was obligated to repay.  First

Union did not object to paying Beth W. Corp.'s claim against

decedent's estate for the amount of transfers that decedent had

not repaid.

    3.    <u>Interest Paid by Decedent to Beth W. Corp. and
Dividends and Salary Paid by Beth W. Corp. to Decedent</u>

The following chart shows the amounts of interest paid by

decedent to Beth W. Corp. and dividends and salary that Beth W.

Corp. paid to decedent:

| Year | Interest<br>Decedent<br>Paid To<br>Beth W. Corp. | Dividends<br>Beth W. Corp.<br>Paid To<br>Decedent | Salary<br>Beth W. Corp.<br>Paid To<br>Decedent |
|------|------|------|------|
| 1985 | $148,905 | $200,000 | $30,000 |
| 1986 | 165,169 | 230,000 | 30,000 |
| 1987 | 183,786 | 270,062 | 40,000 |
| 1988 | 145,124 | 165,738 | 40,000 |
| 1989 | 78,471 | 136,090 | 15,000 |

Decedent paid income taxes on the dividends and salary she

received from Beth W. Corp.  Decedent paid some of the interest

and principal to Beth W. Corp. by journal entries.  Decedent used

some of the dividends to pay interest and principal.  Decedent

could have repaid Beth W. Corp. by liquidating Beth W. Corp.'s

assets.

C.    <u>Trusts Created by Decedent</u>

Decedent created a revocable trust and irrevocable trusts #1

and #2 in December 1986.  She created irrevocable trust #3 on

March 19, 1987.  The trustees were Pollett, Jeffrey H. Beck

(Beck) (an attorney for Beth W. Corp. and decedent), and Irwin A. Weiser (Weiser). Decedent transferred Beth W. Corp. stock to the irrevocable trusts during her life.

1. Revocable Trust

Decedent was the beneficiary of the revocable trust during her lifetime. After she died, the beneficiaries of the revocable trust were her husband, Clifford Gray; her sister, Gladys White; her nephew, Rex Deason; her granddaughter, Pollett; and three great-grandchildren. Decedent transferred 7,991 shares of Beth W. Corp. stock to the revocable trust in 1987.

Decedent transferred 534 shares of Beth W. Corp. stock from the revocable trust to Beth W. Corp. (454 shares on June 30, 1987 and 80 shares on July 31, 1988). Decedent reported the amount received in exchange for the June 30, 1987, transfer as a $270,062 dividend on her 1987 Federal income tax return. She reported the amount received in exchange for the July 31, 1988, transfer as a $45,146 dividend on her 1988 Federal income tax return.

2. Irrevocable Trust #1

Clifford Gray was the income beneficiary of irrevocable trust #1. The trust agreements stated that when he died, the remainder was to be distributed to irrevocable trust #2.

Decedent transferred 765 shares of Beth W. Corp. stock to irrevocable trust #1 on December 23, 1986. She reported on her

1986 gift tax return that the value of the transfer was $456,705. She claimed a marital deduction of $456,705 for the gift under section 2523.

The assets in irrevocable trust #1 were transferred to irrevocable trust #2 after Clifford Gray died on January 5, 1988.

### 3. Irrevocable Trust #2

The trust agreements provided that the income and principal of irrevocable trust #2 was to be accumulated during decedent's lifetime. Decedent's granddaughter and great-grandchildren were the remainder beneficiaries of irrevocable trust #2. Irrevocable trust #2 transferred 109 shares of Beth W. Corp. stock to Beth W. Corp. on March 19, 1988, and 75 shares on July 31, 1989. Irrevocable trust #2 treated those transfers as redemptions and reported the amounts received in exchange as dividends on its income tax returns. The redemptions were recorded on duly executed stock certificates.

### 4. Irrevocable Trust #3

Decedent created and transferred 1,004 shares of Beth W. Corp. stock to irrevocable trust #3 on March 19, 1987. The trust agreement for irrevocable trust #3 required the trustees to distribute all principal and accumulated income to Pollett when decedent died. Irrevocable trust #3 did not grant to any beneficiary a power to demand immediate possession of any part of the corpus. Decedent reported on her 1987 gift tax return that

the transfer of the 1,004 shares was a taxable gift which had a total value of $595,090.88.

Irrevocable trust #3 transferred 134 shares of Beth W. Corp. stock to Beth W. Corp. on March 19, 1988, and 108 shares on July 31, 1989. Irrevocable trust #3 treated the transfers as a redemption and reported the amount received in exchange as taxable dividends on its income tax returns.

Petitioner and the trusts recorded the dividends and redemptions on their books and records. Petitioner recorded the redemptions on duly executed stock certificates. Petitioner reported the dividends and redemptions on its income tax returns.

D.   Land Sale

Beth W. Corp. sold 55.91 acres of unimproved, non-income producing land to irrevocable trusts #2 and #3 on March 19, 1987, for $2,265,000. The parties obtained two appraisals before the sale. The average value of the two appraisals was $1,882,000.

The trusts paid for the 55.91 acres with a promissory note for $2,265,000 secured by the 55.91 acres and a $500,000 mortgage. The note required the trustees to pay interest at a rate of 6.15 percent per year. The principal was due on March 19, 1990. The mortgage provided that Beth W. Corp. could foreclose on the trusts in the event of default.

Beth W. Corp. reported the sale of the 55.91 acres on its Federal income tax return for its taxable year ending July 31,

1987. Beth W. Corp. realized a taxable capital gain of $2,220,143, but did not recognize it (built-in capital gain) because it elected installment sale treatment.[5]

The trustees wanted to have the 55.91 acres rezoned so they could sell it for a profit and repay the promissory note. They retained counsel, who arranged to have the zoning of the 55.91 acres changed to commercial.

The trustees listed the 55.91 acres for sale with a realtor. Despite the realtor's efforts and a price reduction (of an amount not specified in the record), the trusts had not sold the 55.91 acres by the time of trial. Several other comparable developments already underway in the same area were not doing well.

Beck resigned as a trustee early in 1989. First Union succeeded Beck as a trustee. Smith, the trust administrator for First Union, was responsible for irrevocable trusts #2 and #3.

The trusts paid the interest that was due on the note in 1988 and 1989, but did not pay the principal when it was due in March 1990. Beth W. Corp. paid Federal income tax on the interest it received on the note. Beth W. Corp. had not foreclosed on the mortgage as of the date of trial.

The fair market value of the 55.91 acres was $2,265,000 when decedent died.

---

[5]The parties stipulated that the real estate transfer was not a taxable gift or generation skipping transfer.

E.    The Certified Public Accountants

Irwin A. Weiser, a certified public accountant for 38 years, provided accounting services to Beth W. Corp., decedent, and irrevocable trusts #2 and #3 from about 1964 to 1988.  He was Beth W. Corp.'s treasurer for about 15 years during that time.  He was familiar with Beth W. Corp.'s practices for keeping records and paying taxes.

Albert W. Todd, a C.P.A. for 33 years, provided accounting services for decedent, Beth W. Corp., and irrevocable trusts #2 and #3 after Weiser left.  He prepared tax returns for Beth W. Corp., the irrevocable trusts, and decedent's estate.  He wrote checks, made bank deposits, and prepared the books and records (including financial statements) for Beth W. Corp.

F.    Decedent's Estate Tax Return

On decedent's estate tax return, the estate reported a gross estate of $2,813,175, deductions of $1,772,808, and adjusted taxable gifts of $595,091.[6]  The estate did not elect the alternate valuation date under section 2032.

The estate reported that the value of decedent's Beth W. Corp. stock was $2,293,800, or $307.61 per share.  The estate

---

[6]The parties have stipulated that the gross estate should be increased by $3,343 because petitioner inadvertently omitted a $1,545 bank account from the gross estate and understated the amount of life insurance paid to decedent's estate by $1,798. The parties have also stipulated that decedent's estate may deduct $1,251 less than it claimed, based on a change in the amount allowed for executor's commissions and administration expenses.

reported that decedent owed $1,724,198 to Beth W. Corp. when she died.

OPINION

A.  Whether the Transfers from Beth W. Corp. to Decedent Are Loans or Dividends

   1.  Background and Contentions of the Parties

Petitioner contends that the transfers from Beth W. Corp. to or on behalf of decedent are loans which decedent owed to Beth W. Corp. during her life and which are deductible as a claim against decedent's estate under section 2053(a).

A transfer of money is a loan for Federal income tax purposes if, at the time the funds were transferred, the transferee unconditionally intended to repay the money, and the transferor unconditionally intended to secure repayment. Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988); see also Haber v. Commissioner, 52 T.C. 255, 266 (1969), affd. 422 F.2d 198 (5th Cir. 1970); Saigh v. Commissioner, 36 T.C. 395, 419 (1961).

Respondent concedes that if we decide that the transfers at issue are loans, then they are included in the value of the stock of Beth W. Corp., and petitioner may deduct the amount of the unpaid transfers as a claim against the estate under section 2053.

2.  Applicable Factors

The following factors suggest that a transfer to a shareholder from a corporation is a loan rather than a dividend: (a) The shareholder does not control the corporation; (b) the corporation is restricted in the amount of funds it can lend to the shareholder; (c) the corporation has had substantial earnings and paid a large amount of dividends; (d) the shareholder is able to repay the amount transferred; (e) the corporation seeks repayment; (f) there is an interest-bearing note or other evidence of indebtedness; (g) there is a fixed repayment schedule; (h) there is security or collateral; (i) there is a written loan agreement; (j) the parties treat the transactions as loans in their records; (k) the borrower has made repayments; and (l) the borrower intended to repay the amounts transferred. Busch v. Commissioner, 728 F.2d 945, 948 (7th Cir. 1984), affg. T.C. Memo. 1983-98; Dolese v. United States, 605 F.2d 1146, 1153 (10th Cir. 1979); Alterman Foods, Inc. v. United States, 505 F.2d 873, 877 n.7 (5th Cir. 1974); Road Materials, Inc. v. Commissioner, 407 F.2d 1121, 1123-1124 (4th Cir. 1969), affg. in part and vacating in part T.C. Memo. 1967-187; Zimmerman v. United States, 318 F.2d 611, 613 (9th Cir. 1963); Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. 205 F.2d 353 (2d Cir. 1953); Frierdich v. Commissioner, T.C. Memo. 1989-393, affd. 925 F.2d 180 (7th Cir. 1991); McLemore v. Commissioner, T.C. Memo. 1973-59, affd. 494 F.2d 1350 (6th Cir. 1974).  The factors

are not exclusive, and no one factor controls. See <u>John Kelley Co. v. Commissioner</u>, 326 U.S. 521 (1946); <u>Litton Bus. Sys., Inc. v. Commissioner</u>, 61 T.C. 367, 376-377 (1973); <u>Roschuni v. Commissioner</u>, 29 T.C. 1193, 1201-1202 (1958), affd. 271 F.2d 267 (5th Cir. 1959). We apply these factors next.

### a. The Shareholder's Degree of Control Over the Corporation

Decedent owned 82.49 percent of Beth W. Corp.'s stock when she died. She was Beth W. Corp.'s president, made the daily business decisions, and had complete control of Beth W. Corp. This factor favors respondent.

### b. The Degree to Which Beth W. Corp. Was Restricted in Transferring Funds to or on Behalf of Decedent

There is no evidence that Beth W. Corp. was limited in the amount it could transfer to decedent. This factor favors respondent.

### c. Beth W. Corp.'s Dividends and Earnings History

Beth W. Corp. paid a substantial amount of dividends to decedent. This factor favors petitioner.

### d. Decedent's Ability To Repay

Decedent could have repaid the amounts transferred only if she had liquidated Beth W. Corp. This factor favors respondent.

### e. Beth W. Corp.'s Attempts To Enforce Repayment

Decedent had not paid $1,621,198 of the $1,724,198 that petitioner claims is a loan when decedent died. There is no

evidence that Beth W. Corp. tried to collect any of the unpaid amount. This factor favors respondent.

### f. The Existence of Notes or Other Evidence of Indebtedness

Petitioner contends this factor favors petitioner because Beth W. Corp. prepared promissory notes for decedent. We disagree.

The parties stipulated to copies of 14 stamped promissory notes totaling $1,240,245 and one unsigned note in the amount of $176,423.12. Most of that amount was past due when decedent died. Beth W. Corp.'s books and records show that decedent paid $103,000 of the amount due when she died by forgoing payments for redemptions and dividends. That amount is less than 6 percent of the amount that petitioner contends decedent owed to Beth W. Corp.

The parties to the notes do not appear to have treated the notes with much substance because they largely ignored their terms. This factor favors respondent.

### g. Fixed Repayment Schedule

Petitioner contends that there was a fixed schedule to repay the transfers because the notes had due dates. We disagree. Petitioner did not introduce a repayment schedule. Decedent did not pay the notes when due. When decedent died, $816,000 was due but unpaid. Some of the notes were payable on demand, but Beth W. Corp. had not made any demand for payment on those notes. We

conclude that the parties did not have a fixed repayment schedule.  This factor favors respondent.

### h.  Security or Collateral

Petitioner contends that decedent provided collateral to Beth W. Corp. for the purported loans in the form of a $500,000 mortgage on her home, but introduced no convincing evidence to establish that this had happened.  Even if true, this does not establish that decedent gave Beth W. Corp. adequate collateral for the transfers.  This factor favors respondent.

### i.  Existence of a Written Loan Agreement

There was no written loan agreement.  This factor favors respondent.

### j.  Treatment as Loans in Records

Decedent and Beth W. Corp. recorded and treated the transfers as loans.  Beth W. Corp. reported interest income and decedent recognized dividends owing to her that she used to repay the loans.  Beth W. Corp. reported the transfers as loans receivable on its Florida intangible property returns.  This factor favors petitioner.

### k.  Repayments

Decedent had received but not repaid transfers of $1,724,198 when she died.  Beth W. Corp. deemed $103,000 of the notes satisfied.  This was apparently done by forgoing payments of redemptions and dividends by Beth W. Corp.  This factor favors respondent.

l.    Intent to Repay

Petitioner contends that Weiser's and Pollett's testimony establishes that decedent intended to repay the amounts transferred.  We disagree.  Weiser testified that decedent did not tell him that she did not intend to repay the purported loans.  This does not show that decedent intended to repay the transfers.  Pollett testified that decedent told her that she intended to repay the transfers.  However, decedent had repaid only $103,000 of the amounts transferred when she died, leaving a claimed balance of $1,724,198.  The testimony that decedent intended to repay those funds is less persuasive than decedent's conduct.  This factor favors respondent.

3.  Conclusion

Courts carefully scrutinize a taxpayer's claim that transfers from corporations to their sole stockholders are loans. Turner v. Commissioner, 812 F.2d 650, 654 (11th Cir. 1987), affg. T.C. Memo. 1985-159.  Petitioner argues that the notes decedent gave to Beth W. Corp. and decedent's and Beth W. Corp.'s records establish that the transfers were loans; however, we give less weight to written evidence of debt, bookkeeping and financial reporting, and the labels used by the parties when, as here, the corporation is closely held.  Fin Hay Realty Co. v. United States, 398 F.2d 694, 697 (3d Cir. 1968); Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 286 (1990); Jos. N. Neel Co. v. Commissioner, 22 T.C. 1083, 1090 (1954).  We give more weight to

the objective evidence present here:  decedent's failure to repay the transfers and Beth W. Corp.'s lack of effort to collect, even though most of the notes were past due; the absence of a repayment schedule, adequate collateral, or a loan agreement; and the lack of objective evidence that decedent intended to repay the amounts transferred.  We conclude that the transfers were not loans.  Petitioner may not deduct the transfers as a claim against the estate under section 2053(a), and the transferred amounts are not an asset of Beth W. Corp.

B.    Discount for Tax Liability on Built-In Capital Gain[7]

Beth W. Corp. will be liable for income tax on a built-in capital gain of $2,220,143 if and when the trusts pay the agreed amount for the 55.91 acres.  Sec. 453(a).  Petitioner contends that the stock of Beth W. Corp. should be discounted to take into account this tax liability.[8]

---

[7]The parties agree that the value of Beth W. Corp. stock before discounts (assuming that the transfers are not loans, decided above) equals the net market value of its assets.  That amount is $1,254,307.

[8]Courts have not allowed a discount for built-in capital gain tax for an asset owned by the corporation if the corporation was not likely to pay tax on the capital gain.  See, e.g., Estate of Piper v. Commissioner, 72 T.C. 1062, 1087 (1979); Estate of Huntington v. Commissioner, 36 B.T.A. 698, 706 (1937). Conversely, courts have allowed a discount for built-in capital gains if, among other factors, payment of tax on a capital gain is likely.  See, e.g., Clark v. United States, 36 AFTR 2d 75-6417, at 75-6419, 75-6420, 75-1 USTC par. 13,076 at 87,486, 87,489 (E.D. N.C. 1975); Obermer v. United States, 238 F. Supp. 29, 34, 36 (D. Hawaii 1964).

The fair market value of property on either the date of a decedent's death or on the alternate valuation date is included in a decedent's gross estate.  Secs. 2031(a), 2032(a); sec. 20.2031-1(b), Estate Tax Regs.  Petitioner did not elect to value the estate on the alternate valuation date.  Thus, we must decide the fair market value of decedent's Beth W. Corp. stock on the date of death.

The fair market value of stock, including whether a discount applies, is a question of fact.  Commissioner v. Scottish Am. Inv. Co., 323 U.S. 119, 123-125 (1944); Helvering v. National Grocery Co., 304 U.S. 282, 294 (1938); Estate of Newhouse v. Commissioner, 94 T.C. 193, 217-218, 245 (1990).

It is speculative if, when, and for what price the trusts will sell the 55.91 acres and pay Beth W. Corp.  Payment on the note was due in 1990 but had not been made as of the time of trial.  We infer that payment on the note depended on sale of the 55.91 acres by the trusts.  Beth W. Corp. had a right of foreclosure against the 55.91 acres.  If it exercised that right it would not pay tax on capital gain for sale of the land unless it found another buyer.  Sec. 1038.  The trusts had not sold the land as of the time of trial despite a price reduction.  Petitioner has not shown that it is likely that Beth W. Corp. will pay tax on the built-in capital gain.[9]

---

[9]See Estate of Robinson v. Commissioner, 69 T.C. 222, 226
(continued...)

Petitioner contends that repeal of the General Utilities doctrine[10] entitles it to a discount for built-in capital gains. A corporation could liquidate without paying corporate level tax on its capital gain under the General Utilities doctrine and sections 336 and 337 before their repeal by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 631(a), 100 Stat. 2269-2282. Repeal of the General Utilities doctrine makes it more difficult to avoid capital gain tax liability at the corporate level. However, repeal of the General Utilities doctrine has no bearing here because a corporation generally recognizes built-in gain if it distributes an installment obligation without regard to the General Utils. doctrine. See sec. 453B(a); Krist v. Commissioner, 231 F.2d 548, 550 (9th Cir. 1956); Affiliated Capital Corp. v. Commissioner, 88 T.C. 1157, 1171 (1987).

We conclude that the value of the stock of Beth W. Corp. should not be discounted for built-in tax liability on a capital gain.

---

[9](...continued)
(1977) (decedent owned an installment obligation which we did not discount for income tax payable on collections of future installment payments on the note).

[10] The General Utilities doctrine originated in General Utilities & Operating Co. v. Helvering, 296 U.S. 200 (1935).

C.    Discount for Lack of Marketability

A discount for lack of marketability may apply if there is no ready market for shares in closely held corporations.  Estate of Andrews v. Commissioner, 79 T.C. 938, 953 (1982).  Petitioner must prove that a discount for lack of marketability should apply and the appropriate amount of the discount.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Estate of Gilford v. Commissioner, 88 T.C. 38, 50-51 (1987).

Respondent contends that the value of decedent's Beth W. Corp. stock should not be discounted for lack of marketability because decedent owned a controlling interest in Beth W. Corp. We disagree.  A controlling interest in a nonpublic corporation may be unmarketable.  Estate of Andrews v. Commissioner, supra. Respondent offers no authority that a marketability discount does not apply when valuing a controlling interest.

Respondent contends that a discount for lack of marketability applies only to property valued by using comparable sales or freely traded value and not by reference to net asset value.  We disagree.  Marketability discounts may apply to companies that were valued using the net asset value method. See, e.g., Ward v. Commissioner, 87 T.C. 78, 109 (1986); Harwood v. Commissioner, 82 T.C. 239, 268-269 (1984), affd. 786 F.2d 1174

(9th Cir. 1986); <u>Estate of Piper v. Commissioner</u>, 72 T.C. 1062, 1084, 1086.[11]

Respondent contends that no discount for lack of marketability applies here because we held in <u>Estate of Cloutier v. Commissioner</u>, T.C. Memo. 1996-49, that a discount for lack of marketability applies only to a stock's freely traded value, and petitioner did not apply it to freely traded value. We disagree. Petitioner's expert testified that he used the stock's freely traded value. <u>Estate of Cloutier</u> is distinguishable on that basis. Respondent did not challenge petitioner's expert's testimony on this point.

Beth W. Corp. has no source of income other than dividends, interest, or sale of its assets. Petitioner's expert testified that there is no ready market for the stock of Beth W. Corp. Respondent provided no evidence to the contrary.

We conclude that a discount for lack of marketability applies here.

Petitioner used a 35-percent discount for marketability on its estate tax return. Petitioner's expert used a 40-percent discount for marketability. Petitioner contends that we should

---

[11]See also <u>Estate of Frank v. Commissioner</u>, T.C. Memo. 1995-132; <u>Estate of Luton v. Commissioner</u>, T.C. Memo. 1994-539; <u>Estate of Ford v. Commissioner</u>, T.C. Memo. 1993-580, affd. 53 F.3d 924 (8th Cir. 1995); <u>Estate of Bennett v. Commissioner</u>, T.C. Memo. 1993-34; <u>Estate of Dougherty v. Commissioner</u>, T.C. Memo. 1990-274; <u>Gallun v. Commissioner</u>, T.C. Memo. 1974-284; <u>Estate of Maxcy v. Commissioner</u>, T.C. Memo. 1969-158, revd. in part on other grounds 441 F.2d 192 (5th Cir. 1971).

apply a 40-percent discount for lack of marketability.  We disagree.

Petitioner's expert relies on our analysis in Mandelbaum v. Commissioner, T.C. Memo. 1995-255, affd. 91 F.3d 124 (3d Cir. 1996).  In Mandelbaum, we used studies of marketability discounts for sales of similar interests in similar companies to establish a benchmark, then compared the facts and circumstances of that case to the benchmark to conclude that a 30 percent discount for lack of marketability applied.  The corporation in that case was very different from Beth W. Corp.  It owned women's apparel retail stores and had total annual revenue of $124,898,972 in 1985 that grew steadily to $270,903,000 in 1991.  The shareholders in Mandelbaum had agreements that restricted transfer of stock.

Here, petitioner's expert cited a series of studies of discounts for lack of marketability with various ranges, averages, and medians.  However, he did not show that the companies in the studies were similar to Beth W. Corp. from the standpoint of marketability.  Thus, we do not use those studies here.

We conclude that petitioner's expert overstated the amount of the appropriate discount for lack of marketability.  We believe the proper amount of the discount for lack of marketability is 15 percent.

The value of 82.49 percent of Beth W. Corp. stock was $879,476.12 ($1,254,307 x .85 x .8249) on August 30, 1989.

To reflect concessions and the foregoing,

<u>Decisions will be entered under Rule 155.</u>