T.C. Memo. 1997-483


UNITED STATES TAX COURT


IRENE EISENBERG, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17267-95.                    Filed October 27, 1997.


Martin A. Stoll, for petitioner.

Drita Tonuzi, for respondent.


MEMORANDUM OPINION

HAMBLEN, Judge: This matter is before the Court on the parties' cross-motions for summary judgment pursuant to Rule 121.[1] Both parties submitted memoranda in support of their respective positions.

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal gift taxes for the taxable years 1991, 1992, and 1993 in the amounts of $20,157.99, $38,257.15, and $3,319.55, respectively. The deficiencies are attributable to respondent's disallowance of petitioner's valuations of closely held corporate stock.

Respondent and petitioner have both alleged in their respective motions that there are no genuine issues as to material facts and that a decision may be rendered as a matter of law. We agree with their allegations. Consequently, the case herein is ripe for summary judgment.

The sole issue for decision is whether, in determining the Federal gift tax value of her stock in a corporation, on the basis of the net asset value method of valuation, petitioner may take into account the full amount of the capital gain taxes attributable to the built-in gain on the corporation's sole asset at certain stock transfer dates.

Background

At the time of the filing of the petition in this case, Irene Eisenberg, petitioner, resided in New York, New York. On January 25, 1980, Avenue N Realty Corp. (the corporation) was organized under the laws of the State of New York. From its inception, petitioner held all issued and outstanding common stock of the corporation, which comprised 1,000 shares. The corporation made an election, effective on January 1, 1987, to be

treated as a subchapter S corporation. Subsequently, on January 1, 1989, the corporation's S election was revoked. During the years at issue, the corporation was a subchapter C corporation for Federal tax purposes.

The principal asset of the corporation, other than cash, was a building in Brooklyn, New York (the property), which was leased to third parties. The corporation received income from the rents generated from the lease appurtenant to the property during the years at issue. Prior to and during the years at issue, the corporation's only income was from the active trade or business of renting the property.

On December 23, 1991, the first transfer date, petitioner made gifts of 668 shares of stock in the corporation as follows: (1) 334 shares to her son, Joseph Eisenberg; (2) 167 shares to her granddaughter, Joanne B. Bayer; and (3) 167 shares to her grandson, David Blum. Subsequently, on September 30, 1992, the second transfer date, and on February 23, 1993, the third transfer date, petitioner gave as gifts 275 shares and 57 shares of stock in the corporation, respectively, to her son Joseph Eisenberg.

The fair market value of the stock, after a 25-percent minority discount, was $517.20 per share on the first transfer date, $356.71 per share on the second transfer date, and $341.77 per share on the third transfer date.

On the first, second, and third transfer dates, the property's adjusted basis was $69,500, $67,906, and $67,108, respectively. At the time of the first transfer, the fair market value of the property was $600,000. At the time of the second and third transfers, the fair market value of the property was $470,000. The corporation, however, did not possess a plan to liquidate, sell, or distribute the property in conjunction with the stock transfers.

On or about October 16, 1992, April 16, 1993, and April 12, 1994, respondent received petitioner's timely filed Federal gift tax returns, Form 709, for the taxable years 1991, 1992, and 1993, respectively. Respondent issued a statutory notice of deficiency to petitioner on July, 18, 1995.

On August 12 and September 9, 1996, respondent and petitioner, respectively, filed motions for summary judgment with this Court.[2]

---

[2]Subsequently, on Oct. 18, 1996, petitioner amended her petition in this matter. Petitioner stated that the inclusion of certain taxes is necessary for the computation of the unified credit utilized by petitioner with respect to her Forms 709 for the years at issue. Specifically, petitioner sought to incorporate, in this matter, certain taxes imposed by the State of New York, to decrease the value of the corporate stock. On Dec. 12, 1996, respondent filed an answer to petitioner's amendment to her petition. In light of our disposition of this case, we do not address this issue.

<u>Discussion</u>[3]

Rule 121 provides for summary judgment on legal issues in controversies where there is no genuine issue of material fact. <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); <u>Naftel v. Commissioner</u>, 85 T.C. 527, 528-529 (1985); <u>Jacklin v. Commissioner</u>, 79 T.C. 340, 344 (1982). The burden is on the moving party to show that it is entitled to summary judgment and that the matter may be decided on the basis of the documents before this Court. <u>Espinoza v. Commissioner</u>, 78 T.C. 412, 416 (1982); <u>Gulfstream Land & Dev. Corp. v. Commissioner</u>, 71 T.C. 587, 596 (1979); <u>Giordano v. Commissioner</u>, 63 T.C. 462 (1975). Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. <u>Florida Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988).

Section 2501 imposes, generally, a tax on gifts of property by an individual. The gift is measured by the value of the property passing from the donor; if the gift is made in property, the property's value at the date of the gift is considered the amount of the gift. Sec. 2512(a). Fair market value is determined to be the price at which the property would change hands between a willing buyer and a willing seller, neither party

---

[3]Both parties have presented objections to individual stipulations on the grounds of relevance. We find them to be without merit and/or irrelevant to the decision of this case. Consequently, we do not address these matters.

being under any compulsion to buy or to sell, and both having a reasonable knowledge of the relevant facts. United States v. Cartwright, 411 U.S. 546, 551 (1973); sec. 25.2512-1, Gift Tax Regs.

Here, the parties have agreed that the net asset value method is appropriate for the valuation of the stock of the corporation. They are also in agreement as to the fair market value of the property in question and the valuation of the shares as reported on petitioner's Federal gift tax returns. The parties further agree that the corporation would have recognized capital gains in the amount of $530,500, $402,094, and $402,892 for the taxable years 1991, 1992, and 1993, respectively, if the property had been disposed of in a taxable disposition (built-in capital gain). However, the parties diverge on whether, in arriving at the corporation's net asset value, adjustments should be made to reflect costs that would, potentially, be incurred if its assets were liquidated.

Petitioner contends that, for gift tax purposes, she is entitled to take into account the full amount of capital gain taxes to reduce the fair market value of the stock of the corporation. Simply put, petitioner argues that a willing purchaser of the corporate stock would have discounted the otherwise applicable fair market value because of the income tax liability inherent in the aforementioned property. The parties

have stipulated the amounts that would have been realized in the years under consideration if a sale of the property had actually taken place. In that regard, petitioner computed the capital gain tax reductions as though the corporation had sold the property in a taxable disposition on the transfer dates.[4]

Respondent, on the other hand, argues that petitioner is not entitled to reduce the fair market value of the corporate stock to account for potential capital gain taxes since there was no liquidation, distribution, or sale of the stock at the transfer dates.[5]

This Court has repeatedly held that no reduction in the value of closely held stock to reflect potential capital gains is warranted where the evidence fails to establish that a liquidation of the corporation or sale of the corporation's assets is likely to occur. Ward v. Commissioner, 87 T.C. 78, 103-104 (1986); Estate of Andrews v. Commissioner, 79 T.C. 938,

---

[4]In particular, petitioner claimed reductions based upon the assumption that the potential capital gains would be subject to Federal income tax, New York State Franchise Tax on Business Corporations, and New York City General Corporation Tax in the aggregate amounts of $240,079, $181,969, and $182,330 for the taxable years 1991, 1992, and 1993, respectively. Petitioner subsequently amended her petition, seeking to increase these taxes to $255,221, $193,256, and $190,774 for the taxable years 1991, 1992, and 1993, respectively. See supra note 2.

[5]Petitioner states that if we decide against her motion for summary judgment, then she reserves the right to present additional evidence to determine the full amount of taxes that may, indeed, be taken into account. Our holding in this regard renders this issue moot. See supra note 2.

942 (1982); Estate of Piper v. Commissioner, 72 T.C. 1062, 1087

(1979); Estate of Robinson v. Commissioner, 69 T.C. 222, 226

(1977); Estate of Cruikshank v. Commissioner, 9 T.C. 162, 165

(1947).[6]  Moreover, we have also held that a discount to asset

values for the "lost use of money" is inappropriate because it

fails to recognize that the underlying assets will themselves

appreciate, most likely, at a rate similar to that applied as a

discount.  Estate of Andrews v. Commissioner, supra at 950.

The seminal case, Estate of Cruikshank v. Commissioner,

supra, held that potential capital gain taxes were not includable

in the computation for a discount in the valuation of certain

corporate shares.  In that case, the taxpayer held stock in a

closely held corporation which was an investment holding company.

The parties agreed that the corporation should be appraised on

the basis of the value of its underlying assets.  The issue

presented was whether the value of the underlying assets should

be reduced by amounts of commissions and stamp and capital gain

taxes which would become payable if the assets were sold.  We

stated:

---

[6]See also Estate of Gray v. Commissioner, T.C. Memo. 1997-67; Estate of Luton v. Commissioner, T.C. Memo. 1994-539; Estate of Ford v. Commissioner, T.C. Memo. 1993-580, affd. 53 F.3d 924 (8th Cir. 1995); Estate of McTighe v. Commissioner, T.C. Memo. 1977-410; Estate of Thalheimer v. Commissioner, T.C. Memo. 1974-203, affd. on this issue and remanded without published opinion 532 F.2d 751 (4th Cir. 1976); Gallun v. Commissioner, T.C. Memo. 1974-284.

the costs of disposal like broker's commissions are not a proper deduction. <u>Estate of Henry E. Huntington</u>, * * * [36 B.T.A. 698 (1937)]. Still less do we think a hypothetical and supposititious liability for taxes on sales not made nor projected to be a necessary impairment of existing value. We need not assume that conversion into cash is the only use available to an owner, for property which we know would cost him market value to replace. * * * [<u>Id.</u> at 165.]

Subsequently, in <u>Estate of Piper v. Commissioner</u>, <u>supra</u>, the issue for our consideration was the valuation of the stock of two investment companies for gift tax purposes. The taxpayer sought to discount the value of the stock for potential capital gain taxes at the corporate level. We rejected such an approach, holding:

We consider such a discount unwarranted under the net asset valuation technique employed herein, where there is no evidence that a liquidation of the investment companies was planned or that it could not have been accomplished without incurring a capital gains tax at the corporate level. [<u>Id.</u> at 1087.]

As we aptly stated in <u>Ward v. Commissioner</u>, <u>supra</u> at 104 (quoting <u>Estate of Cruikshank v. Commissioner</u>, <u>supra</u> at 165): "'We need not assume that conversion into cash is the only use available to an owner, for property which we know would cost him market value to replace.'" Consequently, taxpayers may not obtain a valuation discount for estate and gift tax purposes based on an event that may not transpire. Hence, "When liquidation is only speculative, the valuation of assets should not take these costs into account

because it is unlikely they will <u>ever be</u> incurred." <u>Estate of Andrews v. Commissioner</u>, <u>supra</u> at 942 (emphasis added).

In sum, the primary reason for disallowing a discount for capital gain taxes in this situation is that the tax liability itself is deemed to be speculative. Specifically, in the above cases, there was a failure to show the requisite likelihood that the beneficiaries would liquidate the corporation or sell the underlying assets and incur the tax and other expenses. Further, there was no showing that a hypothetical willing buyer would desire to purchase the stock with the view toward liquidating the corporation or selling the assets, such that the potential tax liability would be of material and significant concern.[7]

Petitioner contends that <u>Estate of Piper v. Commissioner</u>, <u>supra</u> at 1087, and <u>Estate of Luton v. Commissioner</u>, T.C. Memo.

---

[7]In <u>Ward v. Commissioner</u>, 87 T.C. 78, 104 (1986), this Court summarized its position as follows:

> there is no evidence that the liquidation of the entire corporation is imminent or even contemplated. Under such circumstances, "We need not assume that conversion into cash is the only use available to an owner, for property which we know would cost him market value to replace." <u>Estate of Cruikshank v. Commissioner</u>, 9 T.C. 162, 165 (1947). A hypothetical willing buyer of the shares in an arm's-length sale could expect no reduction in price for sales expenses and taxes that he might incur in a subsequent sale of either the shares or the corporation's underlying assets. When liquidation is only speculative, such costs are not to be taken into account. <u>Estate of Andrews v. Commissioner</u>, 79 T.C. at 942; <u>Estate of Piper v. Commissioner</u>, 72 T.C. 1062, 1086-1087 (1979); <u>Estate of Cruikshank v. Commissioner</u>, supra. [Fn. ref. omitted.]

1994-539, among other cases, represent the denial of a discount for potential capital gain taxes was based, in part, on the possibility that the taxes could be avoided by liquidating the corporation.

In that regard, petitioner argues that those cases have lost their vitality as a result of the October 22, 1986, enactment of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, sec. 631, 100 Stat. 2269. Specifically, petitioner contends that the amendments made by the TRA to sections 336 and 337 repealed the General Utilities doctrine.[8] Petitioner states that prior to the effective date of TRA, the corporation could have liquidated completely and distributed the property and cash to her, or to any other individual or entity, without recognizing the built-in gain. Further, petitioner asserts that, subsequent to the effective date of TRA, she does not possess the ability to completely liquidate the corporation without the recognition of the built-in gain. See e.g., secs. 336(a) and 337. As a result, petitioner argues that it is now a virtual certainty that if the

---

[8]The General Utilities doctrine originated in General Utilities & Operating Co. v. Helvering, 296 U.S. 200 (1935). The holding of that opinion allowed a corporation to avoid recognition of gain on the distribution of appreciated property to its shareholders. In 1954, Congress codified the General Utilities doctrine in sec. 311. Pursuant to the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, sec. 631(a), (c), 100 Stat. 2085, 2269, corporations are now required to recognize gain on the distribution of appreciated property except in certain limited circumstances. Secs. 311, 336 as amended by TRA sec. 631(a), (c).

corporation is liquidated, capital gain taxes will be imposed at the corporate level.  Moreover, petitioner states that any "willing buyer" of the corporate stock, having "reasonable knowledge" of the applicability of the capital gain taxes, would reduce the price paid for the stock by the full amount of the tax.  Sec. 25.2512-1, Gift Tax Regs.  Thus, petitioner argues that this change in the law justifies the allowance of a discount for potential taxes.

In contrast, respondent counters that a hypothetical buyer possesses the option of avoiding the imposition of any capital gain taxes through the purchase of corporate stock and the continuation of the business of leasing the property in question through the corporate form.  Thus, respondent asserts that any individual or entity may indefinitely defer taxes.  Additionally, respondent argues that there are several transactions in which the corporation may transfer the property to a new corporation in exchange for the new corporation's stock and thus avoid the recognition of gain.  See e.g., secs. 351 and 355.

We agree with respondent that a discount for capital gain taxes does not apply here.  As noted, we have held that a discount for potential costs of sale or liquidation, whether in the nature of selling expenses or income taxes that might be incurred, is inappropriate where the sale or liquidation is itself speculative.

In this instance, both parties have stipulated that there was no plan of liquidation.  Accordingly, it is inapposite to apply a discount for potential capital gain taxes when the recognition event itself is purely speculative.

For the foregoing reasons, we will (1) grant respondent's motion for summary judgment and (2) deny petitioner's motion for summary judgment.

<u>An appropriate order and</u>
<u>decision will be entered for</u>
<u>respondent</u>.